STATE OF NORTH CAROLINA v. KENNETH MICHAEL BRYANT

No. 166A91-2

(Filed 29 July 1994)

### 1. Criminal Law § 762 (NCI4th)— noncapital first-degree murder—instructions—reasonable doubt

There was no error in a noncapital first-degree murder trial under *Cage v. Louisiana,* 498 U.S. 39, from the use of the phrase "honest substantial misgiving" in defining reasonable doubt where, read in context and considering the instruction as a whole, the jury would not have interpreted the instruction to have overstated the level of doubt required for acquittal. Moreover, there is no reasonable likelihood that the jury would have understood "moral certainty" to be disassociated from the evidence in the case. The phrase would not have allowed the jury to return a verdict of guilty based on a subjective feeling rather than upon an evaluation of the evidence.

**Am Jur 2d, Trial § 1385.**

### 2. Evidence and Witnesses § 339 (NCI4th)— noncapital first-degree murder—other acts of violence and threats—admissible

The trial court did not err in a noncapital first-degree murder prosecution by allowing a prosecution witness to testify concerning other alleged acts of violence and threats of violence by defendant where the testimony was corroborative of other testimony, was corroborated by other testimony, and tended to show malice, an essential element of first-degree murder. The evidence was thus relevant to an issue other than defendant's character. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence §§ 437 et seq.; Homicide § 310.**

3.   **Evidence and Witnesses § 775 (NCI4th)— noncapital first-degree murder—alibi testimony excluded as hearsay—no prejudicial error**

There was no prejudicial error in a noncapital first-degree murder prosecution where the court excluded testimony concerning defendant's plans on the night of the murder, which defendant contends were relevant to show that defendant did not go to the victim's trailer but went to look for men from whom he had arranged to buy stolen goods. Evidence of a declarant's intent to engage in a future act has been held to be admissible, but there was no prejudice from the exclusion here because the evidence offered an additional explanation for defendant's presence in the area of the scene of the crime rather than an alibi, defendant was able to get the evidence before the jury, and defendant put on extensive evidence to support a different alibi.

**Am Jur 2d, Appeal and Error §§ 797-804.**

4.   **Evidence and Witnesses § 2891 (NCI4th)— noncapital first-degree murder—witness to whom defendant confessed—cross-examination—sexual relations with defendant**

The trial court did not err in a first-degree murder prosecution by excluding testimony on cross-examination that a witness to whom defendant confessed had sexual relations with defendant after the confession. Although defendant contended that this evidence was admissible to impeach the witness, who claimed that she was shocked and scared by the confession, and to corroborate other witnesses who testified that the witness and defendant were affectionate on the night of the shooting, evidence of the witness's response to the confession was admitted, evidence that she had sex with defendant did not tend to prove any fact in issue, any impeachment value from the apparent strangeness of her behavior was tenuous because the witness had testified that she was drinking and using cocaine on the night of the killing, and defendant was not deprived of the opportunity to corroborate other testimony because evidence that the witness and defendant were affectionate was admitted.

**Am Jur 2d, Witnesses §§ 484 et seq.**

**5.  Criminal Law § 442 (NCI4th)— noncapital first-degree murder—prosecutor's argument—vengeance—no prejudicial error**

There was no prejudicial error in the prosecutor's argument in a noncapital first-degree murder prosecution where defendant contended that the prosecutor argued that it was the jury's duty to avenge the victim's death where the prosecutor did not explicitly argue that the jury had a duty to avenge the victim's death and, while his choice of language as he discussed the historical context is not to be condoned, when read in context, the argument did not result in the jury being misled regarding its duty or the proper basis for its verdict.

**Am Jur 2d, Trial §§ 567 et seq.**

On remand by the Supreme Court of the United States, —— U.S. ——, 128 L. Ed. 2d 42 (1994), for further consideration in light of *Victor v. Nebraska,* 511 U.S. ——, 127 L. Ed. 2d 583 (1994).

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janine M. Crawley, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant was tried noncapitally at the 2 October 1990 Criminal Session of Superior Court, Edgecombe County, and convicted by a jury of first-degree murder. On 5 October 1990, judgment was entered sentencing defendant to life imprisonment. On appeal, this Court found error in the reasonable doubt instruction based on *Cage v. Louisiana,* 498 U.S. 39, 112 L. Ed. 2d 339 (1991). *State v. Bryant,* 334 N.C. 333, 432 S.E.2d 291 (1993) (*Bryant I*). However, the Supreme Court of the United States vacated the judgment and remanded the case to this Court for further consideration in light of *Victor v. Nebraska,* 511 U.S. ——, 127 L. Ed. 2d 583 (1994). *North Carolina v. Bryant,* —— U.S. ——, 128 L. Ed. 2d 42 (1994).

The evidence presented at trial is summarized in this Court's prior opinion. *Bryant,* 334 N.C. at 335-37, 432 S.E.2d at 292-93. We will discuss only those facts necessary for a complete consideration of the questions before us on remand.

**[1]** In *State v. Cage*, 554 So. 2d 39 (La. Sup. Ct. 1989), the Supreme Court of Louisiana upheld the following jury instruction defining reasonable doubt:

> If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to a *grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty*. If after giving a fair and impartial consideration to all the facts in the case you find the evidence unsatisfactory or lacking of one any [sic] single point indispensibly [sic] necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.

*Id.* at 41 (emphasis in original). The Supreme Court of Louisiana concluded that "[t]he use of 'grave uncertainty' and 'moral certainty,' if taken out of context, might overstate the requisite degree of uncertainty and confuse the jury. However, taking the charge as a whole, we find that reasonable persons of ordinary intelligence would understand the definition of 'reasonable doubt.' " *Id.*

Defendant's petition for certiorari was allowed by the United States Supreme Court and that Court, in a per curiam opinion, held that the instruction violated the Due Process Clause of the Fourteenth Amendment. *Cage v. Louisiana*, 498 U.S. 39, 41, 112 L. Ed. 2d 339, 342. The Court explained:

> It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruc-

tion to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Id.*

This Court applied *Cage* in *Bryant I* to analyze a constitutional challenge to the following instruction:

A reasonable doubt is not a mere possible doubt, for most things that relate to human affairs are open to some possible or imaginary doubt.

A reasonable doubt is not a vain, imaginary or fanciful doubt, but it is a sane, rational doubt arising out of the evidence or lack of evidence or from its deficiency.

When it is said that the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, it is meant that they must be fully satisfied or entirely convinced or satisfied to a *moral certainty* of the truth of the charge.

If, after considering, comparing and weighing all the evidence, the minds of the jurors are left in such condition that they cannot say they have an abiding faith to a *moral certainty* in the defendant's guilt, then they have a reasonable doubt; otherwise not.

A reasonable doubt, as that term is employed in the administration of criminal law, is *an honest substantial misgiving* generated by the insufficiency of the proof. An insufficiency which fails to convince your judgment and confidence and satisfy your reasons as to the guilt of the defendant.

(Emphasis added.)

Relying on *Cage*, this Court found the instruction to be constitutionally infirm. We concluded that "the crucial term in the reasonable doubt instruction condemned by the United States Supreme Court in *Cage* [was] 'moral certainty,'" and that "[t]he correct standard for conviction beyond a reasonable doubt is evidentiary certainty rather than moral certainty." *Bryant*, 334 N.C. at 342, 432 S.E.2d at 297. We noted that the instruction in *Bryant I* was essentially identical to the instruction in *State v. Montgomery*, 331 N.C. 559, 417 S.E.2d 742 (1992), where two members of this Court concluded that "the trial court used a combination of terms so similar to the combination disapproved of in *Cage* that there is a 'reasonable likelihood' that the jury applied the challenged instruction in a way that violated the Due

Process Clause." *Id.* at 573, 417 S.E.2d at 750. We discussed the distinction between a jury believing that defendant is morally guilty and a finding of guilt based on the evidence presented at trial, concluding that

> when reasonable doubt is defined in terms of "grave uncertainty," "actual substantial doubt," or in terms which suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard, and the jury is then told that what is required for conviction is moral certainty of the truth of the charge, the instruction will not pass muster under *Cage*.

*Bryant* at 343, 432 S.E.2d at 297. Implicit in our holding was our conclusion that the term "honest substantial misgiving" is a term which suggests a higher degree of doubt than is required for acquittal under the reasonable doubt standard and, since the jury was also told that what was required for conviction was moral certainty of the truth of the charge, the instruction was error under *Cage*.

Our reading of *Cage* has now been enhanced by *Victor v. Nebraska* in which the Supreme Court of the United States reexamined the constitutionality of jury instructions defining reasonable doubt. In *Victor*, the Court held that certain reasonable doubt instructions which included the terms "moral certainty" and "substantial doubt" did not violate the Due Process Clause. In each of two cases, the Court found that the instruction, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury.[1] In the case of petitioner Sandoval, the jury was instructed:

> Reasonable doubt is defined as follows: It is *not a mere possible doubt*; because everything relating to human affairs, and *depending on moral evidence*, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge.

*Victor*, 511 U.S. at ——, 127 L. Ed. 2d at 591-92 (emphasis in original). The Court acknowledged that the term "moral certainty" had lost some of its historical meaning and that a modern jury might understand it to allow conviction on a standard of proof less than the rea-

---

1. The *Victor* opinion consolidated two cases, *Victor v. Nebraska*, No. 92-8894, and *Sandoval v. California*, No. 92-9049, which were briefed and argued together in the U.S. Supreme Court.

sonable doubt standard. The Court concluded however that the remainder of the instruction, particularly the abiding conviction language, helped define the phrase and properly directed the jury on the reasonable doubt standard. The Court also considered Sandoval's argument that with this instruction a juror could be convinced to a *moral certainty* of defendant's guilt even though the prosecutor had not presented *proof* beyond a reasonable doubt as is constitutionally required. The Court rejected this argument, referring again to other language in the instruction which "explicitly told the jurors that their conclusion had to be based on the evidence in the case." *Id.* at —, 127 L. Ed. 2d at 597. The Court noted that this instruction differed from the *Cage* instruction which "simply told [the jurors] that they had to be morally certain of the defendant's guilt." *Id.* at —, 127 L. Ed. 2d at 596.

In petitioner Victor's trial the jury was instructed:

'Reasonable doubt' is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, *to a moral certainty*, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the *strong probabilities of the case*, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the state, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

*Victor*, 511 U.S. at —, 127 L. Ed. 2d at 598 (emphasis in original). The Court considered the argument that "substantial doubt" implies a greater doubt than that required for acquittal under *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368 (1970). The Court found that use of this phrase was problematic, but that any ambiguity was removed by reading the phrase in the context of the sentence in which it was used. That sentence distinguishes between an "actual and substantial

doubt" and "a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture." The Court noted that such an explicit distinction was not present in *Cage* where "substantial doubt" was used in conjunction with "grave uncertainty" and permitted an interpretation of the two phrases that would overstate the degree of doubt required for acquittal. *Victor*, 511 U.S. at ——, 127 L. Ed. 2d at 599. Further, the Court noted that the *Victor* instruction provided an alternative definition of reasonable doubt: "a doubt that would cause a reasonable person to hesitate to act." *Id.*

The Court also considered petitioner Victor's objection to use of the phrase "moral certainty" in this instruction. The Court pointed to other portions of the instruction which served to put the phrase in context:

> Instructing the jurors that they must have an abiding conviction of the defendant's guilt does much to alleviate any concerns that the phrase moral certainty might be misunderstood in the abstract. . . . The instruction also equated a doubt sufficient to preclude moral certainty with a doubt that would cause a reasonable person to hesitate to act. . . . The jurors were told that they must be convinced of Victor's guilt "after full, fair, and impartial consideration of all the evidence."

*Victor*, 511 U.S. at ——, 127 L. Ed. 2d at 600. The jurors were also instructed that they should decide any issues of fact based solely on the evidence.

Finally, the Supreme Court in *Victor* removed any lingering doubt regarding the proper standard of review for challenges to the constitutionality of reasonable doubt instructions. "[T]he proper inquiry is not whether the instruction "could have" been applied in [an] unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor*, 511 U.S. at ——, 127 L. Ed. 2d at 591 (citing *Estelle v. McGuire*, 502 U.S. ——, —— & n.4, 116 L. Ed. 2d 385, 399 & n.4 (1991)).

Reconsidering the reasonable doubt instruction in the present case, in light of *Victor*, we first examine the use of the phrase "honest substantial misgiving." This Court continues to recognize, as did the United States Supreme Court in *Cage* and in *Victor*, that "the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." *Victor*, 511 U.S. at ——, 127 L. Ed. 2d at 599.

However, when read in context and considering the instruction as a whole, we conclude that the jury would not have interpreted the instruction to have overstated the level of doubt required for acquittal.

First, we note that in *Cage* the Court was "concerned that the jury would interpret the term 'substantial doubt' in parallel with the preceding reference to 'grave uncertainty,' leading to an overstatement of the doubt necessary to acquit." *Id.* In *Victor*, as in the present case, there is a single reference to "substantial doubt" or "substantial misgiving" which is qualified by other language in the instruction. In the present case the jury was also instructed that a reasonable doubt is "not a mere possible doubt," that it is "not a vain, imaginary or fanciful doubt" and that it is "not a doubt suggested by the ingenuity of counsel or by your own ingenuity not legitimately warranted by the testimony." In this instruction "substantial" was used to refer to the "existence rather than the magnitude of the doubt," and therefore there is no concern that its use would have been interpreted to overstate the degree of doubt required for acquittal. *Id.*

We next consider defendant's argument that the use of the phrase "moral certainty" in this instruction would allow a jury to return a verdict of guilty based on a subjective feeling rather than upon an evaluation of the evidence. The Court in *Victor* acknowledged the distinction drawn in *Cage* between "moral certainty" and "evidentiary certainty." *Victor*, 511 U.S. at —, 127 L. Ed. 2d at 596. The Court stated, however, that in *Cage*, "the jurors were simply told that they had to be morally certain of the defendant's guilt; there was nothing else in the instruction to lend meaning to the phrase." *Id.* In *Victor*, the jury was explicitly told to base its conclusion on the evidence in the case, and there were other instructions which reinforced this message.

Likewise, in the present case, the jury was instructed that a reasonable doubt existed "if, *after considering, comparing and weighing all the evidence*, the minds of the jurors are left in such condition that they cannot say they have an abiding faith to a moral certainty in the defendant's guilt." The jury was also instructed that a reasonable doubt is "a sane, rational doubt *arising out of the evidence or lack of evidence* or from its deficiency" and that it is "an honest substantial misgiving generated by the *insufficiency of the proof*." We therefore conclude that, under *Victor*, "there is no reasonable likelihood that the jury would have understood moral certainty

to be disassociated from the evidence in the case." *Victor*, 511 U.S. at —, 127 L. Ed. 2d at 597. Thus, on remand, we hold, contrary to our previous decision in this case, that there is no *Cage* error entitling defendant to a new trial. *Id.*

In *Bryant I* we also addressed defendant's argument that the trial court erred in refusing to grant his motion to dismiss. We found the evidence sufficient to withstand the motion to dismiss and that portion of our opinion remains undisturbed. *Bryant*, 334 N.C. at 337-338, 432 S.E.2d at 293-294. We now address assignments of error raised by defendant and not addressed in *Bryant I.*

[2] First, defendant contends that the trial court erred by allowing a prosecution witness to testify concerning other alleged acts of violence and threats of violence by defendant which were irrelevant to this case. State's witness Bob Skaggs testified in pertinent part as follows:

Q: Now, on the Thursday before Christmas, in 1989, did you have a conversation with the defendant?

A: Yes, sir.

. . .

Q: What did he tell you?

A: He said he was going —.

Mr. Surles: Okay. Objection

Court: Overruled.

Mr. Copeland: Go ahead.

Witness: He said he was going to cut up somebody with a knife.

Q: And, did he say where he was going to do this?

A: He said in North Carolina.

Q: And, did he say who?

A: No, sir.

Q: Now, after that Thursday before Christmas, when was the next time you saw him?

A: He came back about the week later. I don't remember the dates exactly.

Q:    Then, when you got back the week later, did you  have a con-
      versation with him again?

A:    Yes.

Q:    And, when you talked with him then, what did he say?

A:    He said he had cut the boy with the knife.

Defendant contends that he was not referring to the victim in these
statements, that the State produced no evidence showing that the
stabbing was related to the victim's death and that the stabbing was
not relevant to show motive, opportunity, intent, plan, identity or any
other proper purpose under Rule 404(b). Thus, according to defend-
ant, this was improper character evidence which should have been
excluded. We disagree.

We first note that Skaggs' testimony corroborated Doris Bryant's
testimony that a fight had occurred between defendant and the victim
in which defendant cut the victim and the victim and his brother hit
defendant in the face with a shotgun. The testimony of Bryant and
Skaggs was corroborated by Detective Wiggs who testified that dur-
ing the course of his investigation he determined that the victim and
defendant previously had been involved in a fight in which defendant
cut the victim.

Under Rule 404(b) of the North Carolina Rules of Evidence,

[e]vidence of other crimes, wrongs or acts is not admissible to
prove the character of a person in order to show that he acted in
conformity therewith. It may, however, be admissible for other
purposes, such as proof of motive, opportunity, intent, prepara-
tion, plan, knowledge, identity, or absence of mistake, entrap-
ment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1992). "Evidence of another offense is
admissible under Rule 404(b) so long as it is relevant to any fact or
issue other than the character of the accused." *State v. Simpson*, 327
N.C. 178, 185, 393 S.E.2d 771, 775 (1990). Here, evidence of defend-
ant's prior assault on the victim tended to show malice, an essential
element of first-degree murder. The evidence was thus relevant to an
issue other than defendant's character and was properly admitted.
*See also State v. Kyle*, 333 N.C. 687, 697, 430 S.E.2d 412, 417 (1993)
(evidence of prior incident in which defendant struck victim in the
head and threatened her with a knife admissible under Rule 404(b));
*State v. Terry*, 329 N.C. 191, 197, 404 S.E.2d 658, 661 (1991) (evidence

**STATE v. BRYANT**

[337 N.C. 298 (1994)]

of "prior malicious behavior toward the very person defendant was accused of murdering" admissible under Rule 404(b)); *Simpson,* 327 N.C. at 185, 393 S.E.2d at 775 (evidence of prior incident in which defendant stabbed the victim admissible under Rule 404(b)); *State v. Spruill,* 320 N.C. 688, 693, 360 S.E.2d 667, 69 (1987) (evidence of defendant's prior assaults on victim admissible under Rule 404(b)), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 934 (1988). This assignment of error is therefore rejected.

[3] In his next assignment of error defendant contends that the trial court erred by excluding testimony concerning defendant's plans on the night of the murder. This evidence, defendant contends, was admissible under an exception to the hearsay rule. Defendant's sister, Francis Deans, testified that defendant left her home about 6:45 p.m. and returned about 10:30 p.m. Objections were sustained to questions regarding where defendant said he was going and the purpose of his leaving his sister's house that night. Later in direct examination, defendant again tried to elicit this information and the witness testified as follows:

Q:     Do you know whether or not [the defendant] had any money with him?

A:     Yes, sir.

Q:     Tell us what you know about that. What you know about it?

A:     Mike reached in his pocket and had two one hundred dollar bills, and I guess roughly around—I didn't count the twenties but he had at least five or six twenties and tens and fives going to go buy stolen merchandise.

Q:     Did he tell you where he was going to make this buy?

Mr. Copeland:     Objection. Calls for a conclusive response.

A:     No, sir.

Court: Jury will disregard the witness' answer what he was going to do with the money that he showed her.

On further direct examination, the witness was allowed to testify that defendant had an appointment to keep that night. Over a sustained objection, the witness testified that defendant was supposed to meet "two guys."

According to defendant, it is evident from the stricken testimony of this witness that defendant was attempting to introduce into evi-

dence the fact that he told his sister that he planned to meet two men to purchase some stolen merchandise when he left her house on the evening of the murder. Defendant and the State agree that although no offer of proof was made, the evidence that defendant was offering is ascertainable from the transcript and thus there is an adequate record available for appellate review. Defendant argues that this evidence was admissible under Rule 803(3) and was relevant to show that defendant did not go to the victim's trailer when his girlfriend, Cheryl Marlowe, dropped him off, but rather went to look for the men from whom he had arranged to buy stolen goods.

Rule 803(3) provides that the following type of evidence is not excluded by the hearsay rule: "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." N.C.G.S. § 8C-1, Rule 803(3) (1992). We have applied this rule in a number of cases to find evidence of a declarant's intent to engage in a future act to be admissible. In *State v. Sneed*, 327 N.C. 266, 393 S.E.2d 531 (1990), defendant was charged with committing a murder during an attempted robbery of a gas station. This Court considered the admissibility of testimony by a defense witness that another man, Joe Reid, told the witness that he planned to rob the store and asked the witness to drive him to the store. We stated that

"Rule 803(3) allows the admission of a hearsay statement of a then-existing intent to engage in a future act." *State v. McElrath*, 322 N.C. 1, 17, 366 S.E.2d 442, 451 (1988). Therefore, [the witness'] testimony as to Reid's declaration that he wanted to go rob Tripp's Service Station was admissible as evidence of Reid's then-existing intent to engage in a future act.

*Sneed* at 271, 393 S.E.2d at 534. *See also State v. Taylor*, 332 N.C. 372, 386, 420 S.E.2d 414, 422 (1992) (victim's statement to his employer, requesting time off work in order to meet the defendant and then buy a boat, admissible under Rule 803(3)); *State v. Coffey*, 326 N.C. 268, 286, 389 S.E.2d 48, 59 (1990) (statement by child murder victim that she was going fishing with a nice gray-haired man on the day she disappeared admissible under Rule 803(3)).

In the present case, defendant's statement to his sister that he was going to meet two guys to buy stolen merchandise was admissible under Rule 803(3) as a statement of his then-existing intent to engage in a future act. Thus, assuming *arguendo* the proffered evidence met the test of relevancy, the trial court erred by refusing to

admit it. We now consider whether, under the appropriate standard of review, such error entitles defendant to a new trial. *See* N.C.G.S. § 15A-1443(a) (1988).

Defendant argues that he was prejudiced by this error because the excluded evidence created an alibi for the five minutes he was absent from Marlowe's car, that is, the jury may have believed that defendant spent the five minutes searching for his prospective sellers rather than visiting the victim's trailer. First, this evidence did not actually provide an alibi. An alibi is an assertion by defendant that "at the time the crime charged was perpetrated he was at another place and therefore could not have committed the crime." *State v. Cox*, 296 N.C. 388, 392, 250 S.E.2d 259, 262 (1979). The proffered evidence in this case did not put defendant in a location making it impossible for him to have gone to the victim's home and fired the fatal shot through the door. In fact, a reasonable jury could have believed that defendant went to the area to purchase the stolen goods and that he also went to the victim's home, shot him, and then returned to Marlowe's vehicle. Thus, at most, this evidence offered an additional explanation for defendant's presence in the area of the scene of the crime. Further, defendant was able to get this evidence before the jury. Cheryl Marlowe testified on cross-examination that defendant told her that he was supposed to meet some guys that night about buying some stuff. Finally, we also note that defendant put on extensive evidence, through six witnesses, to support a different alibi—that he was at a completely different location playing cards with friends at the time of the shooting. In light of this alibi defense, defendant should not be heard to complain about the exclusion of evidence that would have placed him in the area of the scene of the crime. We conclude that defendant has failed to demonstrate that a reasonable possibility exists that, absent the error of the exclusion of this evidence, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a).

[4] In another assignment of error, defendant contends that the trial court erred by excluding testimony that Cheryl Marlowe admitted having sexual relations with defendant after defendant allegedly told her that he had fired a shot into the victim's trailer. According to defendant, this evidence was admissible to impeach Marlowe who claimed she was shocked and scared by defendant's confession, and to corroborate other witnesses who testified that Marlowe and defendant were affectionate on the night of the shooting.

On direct examination Marlowe testified that she had known defendant for three and one half years and that they had dated during that time. Marlowe testified on cross-examination that defendant was very affectionate with her after the two left the night club on the night of the murder. An objection was sustained to the question, "Tell me how he was affectionate?" Defendant then made an offer of proof for which Marlowe testified that she had made love to defendant that night after he told her that he may have shot someone. The trial judge excluded the evidence based on relevancy. Defendant contends this evidence would have impeached Marlowe by rendering her account of the night's events "bizarre and inconsistent," that is, it would be strange for her to have shared affections and had sex with defendant after he reported to her that he may have killed someone.

Under Rule 401 of the North Carolina Rules of Evidence, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Evidence that Marlowe had sex with defendant after he reported that he may have shot someone did not tend to prove any fact in issue in this case. Marlowe's response to defendant's confession may have been relevant to her credibility and evidence of this was admitted. First, Marlowe had already described on direct examination that she was affectionate with defendant all night. On cross-examination she testified that defendant was affectionate toward her. Defendant acknowledges that the evidence excluded by the trial court's ruling amounted to a description of the *extent* of the affection shared between Marlowe and defendant. We have stated that "[t]rial courts may limit cross-examination to prohibit inquiry into . . . matters of only tenuous relevance, or to ban repetitious or argumentative questions. 1 Brandis on North Carolina Evidence 35 (1982). The legitimate bounds of cross-examination are largely within the discretion of the trial judge." *State v. Wilson*, 322 N.C. 117, 135, 367 S.E.2d 589, 600 (1988) (citation omitted). Here, the extent of the affectionate relations between Marlowe and defendant was of questionable relevance. This is the very type of situation in which the trial court is properly called upon to place some limitations on cross-examination.

We also note that Marlowe testified that she had been drinking and using cocaine on the night of the killing. Thus, any of Marlowe's behavior that night may have appeared strange and any impeachment value of the excluded evidence would have been tenuous at best. We

therefore conclude that the trial court did not abuse its discretion by not permitting cross-examination of this witness in order to show the extent of the affectionate relations between defendant and the witness after the shooting.

Defendant also argues that this evidence was admissible to corroborate testimony of defense witnesses who testified that Marlowe and defendant were affectionate with one another on the night of the shooting. As noted above, evidence that Marlowe and defendant were affectionate was admitted; thus, defendant was not deprived of the opportunity to corroborate the testimony of other witnesses on this point. This assignment of error is rejected.

**[5]** In his final assignment of error, defendant contends that the trial court erred by allowing the prosecutor to argue to the jury that it was the jury's duty to avenge the victim's death. This assignment of error is based on the prosecutor's closing argument as follows:

> Before we had—if there is such a way of saying a civilized society, like we had now or like we have now, you wouldn't have a courtroom.

> It would be very simple. There be a defendant, family of the deceased or friends of the deceased would determine who killed him and they would avenge the death.

> Mr. Surles:    Objection.

> Court:          Overruled.

> Mr. Copeland: But now, we are civilized. The state stands in the place of the victim. And through this there process, we act in the place of the victim.

Defendant contends that this argument invited the jury to ignore the evidence and convict defendant because the victim's family and friends would have sought vengeance. We disagree.

The prosecutor began his closing argument discussing the duty of the jury, the duty of the State, and the role of the law in an ordered society. He attempted within this discussion to provide some historical context, including the above-quoted language. At the time defendant objected, the prosecutor had begun to describe the response to a murder in a society that was not civilized. The basis of defendant's objection at that point is unclear and, nothing else appearing, we are unable to conclude that the trial court erred by overruling the objec-

STATE v. BRYANT

[337 N.C. 298 (1994)]

tion at that time. Assuming, *arguendo*, that this portion of the prosecutor's argument taken as a whole resulted in the suggestion that it was the jury's duty to avenge the death of the victim, we conclude that defendant has not demonstrated that he was prejudiced thereby. N.C.G.S. § 15A-1443(a).

First, the prosecutor did not explicitly argue that the jury had a duty to avenge the victim's death. The prosecutor did argue that the State stands in place of the victim whose family would have, in an uncivilized society, avenged the death of the victim. The prosecutor made these remarks in response to defendant's argument that the jury should return a verdict it could "feel good about." The prosecutor argued that serving on the jury was not something jurors could "feel good about," but "it's a duty. It's a job." His choice of language as he discussed the historical context is not to be condoned. However, when read in context of the entire argument and the clear instructions the jury was given, the prosecutor's argument did not result in the jury being misled regarding its duty or the proper basis for its verdict. The prosecutor followed the aforementioned remarks with a review of the evidence, reminding jurors again that they were not there to feel good, but to do their duty and to consider the evidence supporting the charge. The judge also instructed the jury that it was their duty "to decide from the evidence what the facts are." Thus, even assuming error, defendant cannot demonstrate that he suffered prejudice. *See* N.C.G.S. § 15A-1443(a) (to receive a new trial, defendant must demonstrate that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial"). This assignment of error is without merit.

For the foregoing reasons, we conclude that defendant received a fair trial free of prejudicial error.

NO ERROR.