STATE OF NORTH CAROLINA v. JOHN RYAN TAYLOR, JR.

No. 483A93

(Filed 7 April 1995)

**1. Criminal Law § 762 (NCI4th)— instructions on reasonable doubt—no due process violation**

The trial court's use of the terms "moral certainty" and "honest, substantial misgiving" in its charge on reasonable doubt did not overstate the degree of doubt required for acquittal in viola-

tion of due process where several alternative definitions of reasonable doubt were provided to the jury, and the jury was instructed to base its conclusions on the evidence in the case. Nor did the court's reasonable doubt instructions violate due process because they failed to include "hesitate to act" and "strong enough to exclude any doubt" as alternative definitions and used the phrase "abiding faith" in conjunction with "moral certainty."

**Am Jur 2d, Trial § 1385.**

## 2. Criminal Law § 427 (NCI4th)— prosecutor's jury argument—no comment on defendant's failure to testify

Where defense counsel argued to the jury in a murder and armed robbery trial that testimony by a prosecution witness created an iron-clad alibi for defendant for all but one and one-half hours between the time the victim was seen alive and the time her body was found and that the State, after producing no evidence as to the time of death, would have the jury believe that because the defendant had "no alibi for an hour, that's the time of death," and the prosecutor argued that the jurors had heard no evidence as to defendant's whereabouts between ten o'clock and eleven-thirty the night before the victim's body was found, the prosecutor's questions "Where is his alibi?" and "Where was he?" did not constitute an impermissible comment on defendant's failure to testify since they were directed solely toward defendant's failure to offer evidence to rebut the State's case, and were in response to defense counsel's jury argument. Therefore, the trial court did not abuse its discretion in the denial of defendant's motion for a mistrial based on the prosecutor's remarks. N.C.G.S. § 15A-1061.

**Am Jur 2d, Trial §§ 577 et seq.**

**Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify. 14 ALR3d 723.**

## 3. Criminal Law § 113 (NCI4th)— failure to comply with discovery order—absence of prejudice

Although the trial court ordered the State to make any exculpatory evidence in its possession available to defendant at least twenty days prior to defendant's trial for murder and armed rob-

STATE v. TAYLOR

[340 N.C. 52 (1995)]

bery, defendant was not prejudiced by the State's nondisclosure, prior to trial, of specific information tending to implicate another person as the perpetrator of the crimes where all of this information was ultimately provided to defendant at trial; defendant was allowed to fully explore at trial the theory that the other person murdered the victim; defendant's attorneys competently and zealously argued this theory before the jury; and the State presented overwhelming evidence of defendant's guilt, including evidence that defendant admitted his involvement in the robbery and murder to two witnesses, that a shirt identified as belonging to defendant and stained with blood of the victim's type was found near the victim's residence, and that defendant's fingerprint was found in blood on a piece of wood in the victim's apartment.

**Am Jur 2d, Depositions and Discovery §§ 426, 427.**

**Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.**

**Prosecutor's duty, under due process clause of Federal Constitution, to disclose evidence favorable to accused— Supreme Court cases. 87 L. Ed. 2d 802.**

4. **Evidence and Witnesses § 748 (NCI4th)— opinion testimony—murder not committed by another—curative instruction**

A defendant on trial for murder was not prejudiced by the testimony of law officers that the murder was not committed by another suspect who defendant contended was the perpetrator where the trial court complied with defendant's request that a curative instruction be given to the jurors to strike that testimony from their minds, and after receiving a lengthy instruction, each juror indicated that he or she understood and would follow the court's instruction.

**Am Jur 2d, Appeal and Error § 807.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Phillips, J., at the 20 November 1991 Criminal Session of Superior Court, Craven County, upon a jury verdict of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for robbery with a dangerous weapon was allowed 1 December 1993. Heard in the Supreme Court 11 January 1995.

**STATE v. TAYLOR**

[340 N.C. 52 (1995)]

*Michael F. Easley, Attorney General, by Mary D. Winstead, Associate Attorney General, for the State.*

*Thomas H. Eagen for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 13 November 1990 for the offenses of robbery with a dangerous weapon and the first-degree murder of Janie Gaskins. The defendant was tried capitally, and the jury found defendant guilty as charged of robbery with a dangerous weapon and of first-degree murder on theories of both premeditation and deliberation and felony murder. Following a capital sentencing hearing, the jury recommended a sentence of life imprisonment for the murder conviction. Judge Phillips sentenced the defendant to consecutive terms of life imprisonment for the murder and forty years' imprisonment for the robbery with a dangerous weapon.

At trial, the State presented evidence tending to show that Janie Gaskins died sometime during the late evening hours of 20 October 1990 or the early morning hours of 21 October 1990 as a result of multiple stab wounds to the chest.

Lamm Lovett, a good friend of Ms. Gaskins, visited the victim almost every day of the year. Mr. Lovett described Ms. Gaskins' home as completely fenced in, with a front door, back door and screen door which she locked every night. The front door opened into the living room which contained a couch and a marble-top coffee table in which Ms. Gaskins kept a folding pocketknife. There was also a bedroom, kitchen and small bathroom in Ms. Gaskins' home.

Mr. Lovett testified that he had visited Ms. Gaskins on the evening of 20 October 1990. He noticed that the marble-top coffee table was intact and that the bed in the bedroom was made and undisturbed. Mr. Lovett stated that he paid Ms. Gaskins twenty dollars which he owed her and noticed that she placed the money in one of two small purses she kept tucked in her bra. Ms. Gaskins was also wearing a watch on a gold chain around her neck. At Ms. Gaskins' request, Mr. Lovett went to the garden with Ms. Gaskins and moved a small chair off the porch into the yard beside the fence. At that time, the bathroom window was closed.

The following morning, Mr. Lovett returned to Ms. Gaskins' house but could not get Ms. Gaskins to answer the door. Mr. Lovett and a neighbor then went to the back of the house. They noticed that the

chair Mr. Lovett had placed near the fence the night before was underneath the bathroom window and that the window was now open. Mr. Lovett called the police.

Officer Thomas Mills of the New Bern Police Department was the first officer to arrive at the scene. Officer Mills observed the chair under the partially open bathroom window and noted that the screen door and back door were locked. He gained entry into Ms. Gaskins' house by climbing through the open bathroom window. Once inside, Officer Mills noticed that the top drawer of a bedroom chest was open and that personal items had been thrown on the floor. He also noticed that the covers had been forcefully pulled from the bed. Upon entering the living room, Officer Mills discovered Ms. Gaskins lying on the floor in a pool of blood. On his way out of the house, Officer Mills discovered a sock on the floor of the storage room.

Rosa Crawford Bennett, an investigator with the New Bern Police Department, assisted in the investigation of Ms. Gaskins' death. At some point during her investigation, Ms. Bennett was called by other officers to remove a stained shirt from a trash can at Cedar Grove Cemetery. The stains on the shirt were determined to be bloodstains which matched the blood type of the victim. Investigators at the scene also discovered defendant's latent fingerprint on a bloody piece of wood.

Dr. Charles Garrett, a board certified forensic pathologist, performed an autopsy on the victim. He noted a total of sixty-three stab wounds and numerous blunt force injuries to Ms. Gaskins' body. He observed eleven defensive wounds on the hands and left forearm. In Dr. Garrett's opinion, Ms. Gaskins was conscious at the time she received the defensive wounds to the arm and hands. Dr. Garrett further opined that Ms. Gaskins died as a result of stab wounds to the chest which caused internal bleeding.

The State's evidence further showed that the defendant and Ms. Darcelene Cabbagestalk met and began dating during the summer of 1989 and dated on and off until October of 1990. Ms. Cabbagestalk testified that on 20 October 1990, she and the defendant were together until about ten o'clock in the evening. When the defendant left, he stated he was going home for the night. At that time, defendant had no money and was wearing dark blue jeans, Rockport shoes and a long-sleeve dress shirt. The shirt was white with thick gray stripes and had a flat chest pocket with a button and a red design. The shirt

pocket and cuff were not torn, and there were no stains on the defendant's shirt.

About two hours after leaving, the defendant returned to Ms. Cabbagestalk's house. Upon his return, the defendant was wearing gray pants and a shirt that Ms. Cabbagestalk had never seen before. Defendant was also in possession of approximately one hundred dollars worth of cocaine and a substantial amount of money. Later in the evening, the defendant said he was going to get some more money and then went into the yard beside Cedar Grove Cemetery. The defendant returned with one hundred and sixty dollars. Ms. Cabbagestalk testified that when she asked the defendant where he got the money, he stated that he had broken into a house with a white picket fence around it. At that time, the defendant was also in possession of some jewelry and a pocketknife.

Ms. Cabbagestalk further testified that on 23 October 1990, the defendant told her that he killed a woman. According to Ms. Cabbagestalk, the defendant stated that he entered the victim's house by climbing through a bathroom window. When the defendant entered the house, the victim woke up and came after him with a knife. Defendant then obtained a knife and stabbed her as she came after him. The defendant told Ms. Cabbagestalk that his clothes were either in somebody's trash or at the city dump. Ms. Cabbagestalk identified the shirt recovered from the cemetery trash can as being the defendant's or one just like it.

Tony Chapman grew up with the defendant and saw the defendant about three or four days after he heard about Ms. Gaskins' murder. The defendant told Mr. Chapman that he was the one who killed Ms. Gaskins but that he did not mean to stab her. According to Mr. Chapman, defendant stated that the victim picked up a knife and they scuffled and that he grabbed the knife from her and began stabbing her. Mr. Chapman inquired whether the defendant had left any fingerprints, and defendant said he had not because he had socks on his hands.

I.

[1] In his first assignment of error, the defendant contends that the trial court erred by giving a reasonable doubt instruction that reduced the State's burden of proof below the standard mandated by the Due Process Clause of the United States Constitution. We disagree.

STATE v. TAYLOR

[340 N.C. 52 (1995)]

The trial court instructed the jury in pertinent part as follows:

The State must prove to you that the Defendant is guilty beyond a reasonable doubt. And a reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that's been presented or the lack or insufficiency of the evidence as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the Defendant's guilt. A reasonable doubt is not a vane [sic], imaginary or fanciful doubt, but it's a sane, rational doubt. When it is said that the jury must be satisfied of the Defendant's guilt beyond a reasonable doubt, it is meant that they must be fully satisfied or entirely convinced, or satisfied to a *moral certainty* of the truth of the charge. If, after considering, comparing and weighing all the evidence, the minds of the jurors are left in such condition that they cannot say that they have an *abiding faith to a moral certainty* in the Defendant's guilt, then they have a reasonable doubt. Otherwise not. A reasonable doubt, as that term is employed in the administration of criminal justice, is an *honest, substantial misgiving* generated by the insufficiency of the proof. An insufficiency which fails to convince your judgment and conscience and satisfy your reason as to the guilt of the accused. It is not a doubt generated by the ingenuity of counsel or by your own ingenuity not legitimately warranted by the testimony or one borne of a merciful inclination or disposition to permit the Defendant to escape the penalty of the law, or one prompted by a sympathy for him or those connected with him.

(Emphasis added.)

First, we note the defendant here is contending error with respect to the very portion of the charge on reasonable doubt which he specifically requested. The defendant, through his counsel at the charge conference, requested the inclusion of the "moral certainty" language, contending this term more fully defines reasonable doubt than the generally used pattern charge. The defendant requested that paragraph from *State v. Hammonds*, 241 N.C. 226, 85 S.E.2d 133 (1954), which for decades has been the standard, staple terminology used to further explain the meaning of "reasonable doubt" to our juries. More recently, in *State v. Watson*, 294 N.C. 159, 240 S.E.2d 440 (1978), where the defendant requested reasonable doubt be defined as possessing "an abiding faith *to a moral certainty* in the defendant's guilt," this Court stated: "Additionally, the words 'to a moral cer-

tainty' are synonymous with beyond a reasonable doubt." 294 N.C. at 167, 240 S.E.2d at 446 (citing *Rhinehart v. State*, 175 Ark. 1170, 299 S.W. 755 (1927)).

Now, the defendant, relying on *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1990), *State v. Montgomery*, 331 N.C. 559, 417 S.E.2d 742 (1992) and *State v. Bryant*, 334 N.C. 333, 432 S.E.2d 291 (1993) (*Bryant I*), *judgment vacated*, —— U.S. ——, 128 L. Ed. 2d 42, *on remand*, 337 N.C. 298, 446 S.E.2d 71 (1994), argues that the trial court's use of the terms "moral certainty" and "honest, substantial misgiving" in its charge to the jury violated the Due Process Clause of the United States Constitution.

In *Cage*, the United States Supreme Court held that the use of the terms "grave uncertainty," "actual substantial doubt" and "moral certainty" when defining reasonable doubt created a reasonable likelihood that the jury unconstitutionally found the defendant guilty on a degree of proof less than a reasonable doubt. *Cage*, 498 U.S. at 41, 112 L. Ed. 2d at 342. In *Bryant I*, with the application of *Cage*, a new trial was awarded for an instruction similar to the instruction given the jury in this case.

This Court has recently reexamined *Bryant* in light of *Victor v. Nebraska*, —— U.S. ——, 127 L. Ed. 2d 583 (1994). In *Victor*, the United States Supreme Court held that no particular formation of words is necessary to properly define reasonable doubt, but rather, the instructions, in their totality, must not indicate that the State's burden is lower than "beyond a reasonable doubt." Applying *Victor*, this Court, in *State v. Bryant*, 337 N.C. 298, 446 S.E.2d 71 (1994) (*Bryant II*), reconsidered its earlier holding (*Bryant I*) and found no error in a reasonable doubt instruction that was nearly identical to the instruction in the instant case. In *Bryant II*, the jury was instructed, in pertinent part, as follows:

A reasonable doubt is not a mere possible doubt, for most things that relate to human affairs are open to some possible or imaginary doubt.

A reasonable doubt is not a vain, imaginary or fanciful doubt, but it is a sane, rational doubt arising out of the evidence or lack of evidence or from its deficiency.

When it is said that the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, it is meant that they must be fully satisfied or entirely convinced or satisfied to a *moral certainty* of the truth of the charge.

If, after considering, comparing and weighing all the evidence, the minds of the jurors are left in such condition that they cannot say they have an abiding faith to a *moral certainty* in the defendant's guilt, then they have a reasonable doubt; otherwise not.

A reasonable doubt, as that term is employed in the administration of criminal law, is *an honest substantial misgiving* generated by the insufficiency of the proof. An insufficiency which fails to convince your judgment and confidence and satisfy your reasons as to the guilt of the defendant.

*Bryant II*, 337 N.C. at 302, 446 S.E.2d at 73. We held that when read in context and considered as a whole, the jury would not have interpreted the instruction to have overstated the level of doubt required for acquittal. *Id.* at 306, 446 S.E.2d at 75.

In *Bryant II*, we noted that a single reference to "substantial doubt" or "substantial misgiving," when qualified by alternative definitions of reasonable doubt or other language in the instruction, does not overstate the amount of doubt necessary to acquit. *Id.* at 306, 446 S.E.2d at 75-76. In the present case, as in *Bryant II*, the jury was given several alternative definitions of reasonable doubt. The jury was instructed that a reasonable doubt is "not a vane [sic], imaginary or fanciful doubt," that it "is not a doubt suggested by the ingenuity of counsel or by your own ingenuity not legitimately warranted by the testimony" and that "reasonable doubt is a doubt based on reason and common sense arising out of . . . the evidence." Furthermore, in the case at bar, as in *Bryant II*, the reference was to an "honest, substantial misgiving generated by the insufficiency of the proof." The qualifying phrase "generated by the insufficiency of the proof" properly directed the jury to the evidence. The term "substantial" when so qualified refers to the "existence rather than the magnitude of the doubt." *Id.* Therefore, it is unlikely its use would have been interpreted to overstate the degree of doubt required for acquittal.

Additionally, defendant now contends the trial court's use of the phrase "moral certainty" would allow the jury to return a verdict based on faith or moral truth rather than reason or evidence presented. In *Bryant II*, we held that this argument was without merit so long as the jury was instructed to base its conclusions on the evidence in the case. *Id.* at 306, 446 S.E.2d at 76. In *Bryant II*, the jurors were instructed that they were to consider, compare and weigh all the evidence to determine if reasonable doubt existed. *Id.* Likewise, in the present case, the jurors were instructed that they were to "con-

sider, compare and weigh all the evidence" to determine if reasonable doubt exists, that a reasonable doubt "is a doubt based on reason and common sense arising out of some or all of the evidence that's been presented or the lack or insufficiency of the evidence as the case may be" and that it is "an honest, substantial misgiving generated by the insufficiency of the proof." This language clearly directs the jury to base its decision on the evidence. We therefore conclude, as in *Bryant II*, that there is no reasonable likelihood that the jury would have understood the term "moral certainty" to be disassociated from the evidence.

The defendant also argues that the instruction is constitutionally deficient because it lacks two alternative definitions of reasonable doubt found in *Victor v. Nebraska* and further uses the phrase "abiding faith" in conjunction with "moral certainty."

As to these arguments, defendant contends that in order to be constitutionally firm, the instruction should have defined reasonable doubt as "a doubt that would cause a reasonable person to pause and hesitate before acting thereon" and should have instructed that the probabilities of guilt must be "strong enough to exclude any doubt." As noted above, several alternative definitions of reasonable doubt were provided to the jury. There is no requirement that the "hesitate to act" and "strong enough to exclude any doubt" definitions be used. We also note that this Court has upheld jury instructions stating, contrary to the defendant's argument, that reasonable doubt "*does not* mean that you [the jury] must be satisfied beyond *any* doubt or all doubt." *Watson*, 294 N.C. at 166-67, 240 S.E.2d at 445-46 (emphasis added). Finally, the instruction in this case is identical to the instruction upheld in *State v. Moseley*, 336 N.C. 710, 445 S.E.2d 906 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 802 (1995), in which we recognized that the "use of the terms 'fully satisfied or entirely convinced' and 'abiding faith' in conjunction with 'moral certainty' made it clear to the jury that the State's burden of proof was not less than the constitutional standard." *Id.* at 717, 445 S.E.2d at 910. Accordingly, this assignment of error is overruled.

II.

[2] Defendant next assigns error to the trial court's denial of his motion for mistrial based on the contention that the prosecutor, during closing argument, improperly commented on defendant's failure to testify.

Section 15A-1061 of the North Carolina General Statutes states that "[t]he judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (1988). "The decision to grant or deny a mistrial rests with the sound discretion of the trial court." *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991). Consequently, the trial court's decision will not be disturbed on appeal absent a clear showing that the trial court abused its discretion. *Id.* In this case, we find no such abuse of discretion in the trial judge's denial of defendant's motion for mistrial.

The defendant asserts that the prosecutor made a direct comment on his failure to testify. The defendant contends that after the prosecutor argued to the jurors that they had heard no testimony or evidence as to the defendant's whereabouts between ten o'clock and eleven-thirty the night before the victim's body was found, the prosecutor directly commented on the defendant's silence by asking: "Where is his alibi? . . . Where was he—." The defendant argues that the prosecutor's assertion that he needed an alibi was improper, in that the prosecutor's question to the jury, "[w]here was he—," directly invited the jurors to consider that the defendant, by not testifying, failed to tell them where he was at the time of the crime.

This Court has, on numerous occasions, considered and rejected the contention that statements by the prosecutor in closing argument questioning the failure of the defendant to produce an alibi witness amount to impermissible comments on the defendant's failure to testify. *See State v. Young*, 317 N.C. 396, 346 S.E.2d 626 (1986); *State v. Mason*, 317 N.C. 283, 345 S.E.2d 195 (1986); *State v. Jordan*, 305 N.C. 274, 287 S.E.2d 827 (1982). In the present case, the defendant asked for and received an alibi instruction over the State's objection. The defendant in his closing argument also contended that Ms. Cabbagestalk's testimony created an "iron-clad alibi" for defendant for all but one and one-half hours between the time the victim was last seen alive and the time her body was found. Defense counsel then argued to the jury that the State, after producing no evidence as to time of death, would have the jury believe that because the defendant had "no alibi for an hour, that's the time of death." The defendant then objected when the prosecutor, in response to this argument, questioned the defendant's alibi and whereabouts.

Based on these facts, we conclude that the prosecutor's remarks were directed solely toward the defendant's failure to offer evidence to rebut the State's case, were in response to the defendant's jury argument and were not an impermissible comment on the defendant's failure to testify. As such, we can find no abuse of discretion by the trial judge in denying the defendant's motion for mistrial.

The defendant further contends that several comments in the State's closing argument, in which the prosecutor argued that certain evidence was uncontradicted, were impermissible. It is well settled that the State may properly draw the jury's attention to the failure of the defendant to produce exculpatory evidence or evidence to contradict the State's case. *State v. Erlewine*, 328 N.C. 626, 633, 403 S.E.2d 280, 284 (1991); *see also State v. Eason*, 328 N.C. 409, 402 S.E.2d 809 (1991); *State v. Tilley*, 292 N.C. 132, 232 S.E.2d 433 (1977). This assignment of error is overruled.

### III.

The defendant next assigns error to the trial court's denial of his motion to dismiss based on the State's failure to timely provide discovery and divulge exculpatory information, thereby violating his constitutional rights to a fair trial, due process and effective assistance of counsel.

In this case, the defendant filed separate motions for voluntary discovery and for exculpatory information. The trial judge heard these discovery motions and ordered the State to preserve any exculpatory information in the State's possession and make it available to the defendant at least twenty days prior to trial. The State was also ordered to provide all other information subject to discovery at least twenty days prior to trial. Defendant contends that the State should have provided him with five specific pieces of exculpatory information, prior to trial, which tended to implicate Shade Mashburn as the perpetrator of the crime and not the defendant. Each piece of information was ultimately provided to the defendant at trial. However, the defendant argues that the untimely disclosure of this information compromised defense counsel's ability to digest the material and present effective cross-examinations.

In *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976), the Supreme Court of the United States rejected the notion that every nondisclosure constitutes automatic error. *State v. Howard*, 334 N.C. 602, 605, 433 S.E.2d 742, 744 (1993) (citing *United States v. Agurs*,

427 U.S. at 108, 49 L. Ed. 2d at 354). Instead, the Court held that "prejudicial error must be determined by examining the materiality of the evidence." *Id.* " 'In determining whether the suppression of certain information was violative of the defendant's right to due process, the focus should not be on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, but rather should be on the effect of the nondisclosure on the outcome of the trial.' " *State v. Smith*, 337 N.C. 658, 662, 447 S.E.2d 376, 378 (1994) (quoting *State v. Alston*, 307 N.C. 321, 337, 298 S.E.2d 631, 642 (1983)).

The defendant ultimately received the requested information at trial and was allowed to fully explore his theory that Shade Mashburn murdered Ms. Gaskins. The record reflects that the defendant's attorneys competently and zealously argued this theory before the jury. However, the evidence of the defendant's guilt was overwhelming. The defendant admitted his involvement in the robbery and murder of Ms. Gaskins to two witnesses. A shirt identified as belonging to the defendant, blood stained with the victim's blood type, was found near the victim's residence, and the defendant's fingerprint was found in blood on a piece of wood in the victim's residence. The jury was given the opportunity to consider the defendant's theory that Shade Mashburn committed the murder and was simply unpersuaded. The burden is on the defendant to show that the evidence not disclosed was material and affected the outcome of the trial. *Id.* We find that the defendant has failed to show he was prejudiced by the nondisclosure, prior to trial, of specific information relating to Shade Mashburn's possible involvement in the murder of Ms. Gaskins.

[4] In a related argument, the defendant asserts that he was prejudiced by the admission of testimony by law enforcement officers that Shade Mashburn had not committed the murder. The defendant argues that this error affected the outcome of the case, as the officers' testimony overcame any tendency the jurors may have had to believe that Shade Mashburn may have committed the murder. We do not agree that the admission of the officers' testimony affected the outcome of the defendant's trial. Defense counsel moved that the jurors receive a curative instruction to strike that testimony from their minds. The trial judge complied with defense counsel's request. After receiving the lengthy instruction, each member of the jury indicated that he or she understood and would follow the court's instruction. Jurors are presumed to follow a trial judge's instructions. *State v. Rouse*, 339 N.C. 59, 92, 451 S.E.2d 543, 561 (1994). We find no prejudice to the defendant, as the trial judge properly cured any potential error.

We therefore conclude that there is no reasonable probability that earlier disclosure by the State would have affected the outcome of the defendant's trial. This assignment of error is overruled.

By further assignment of error, defendant asserts the trial court erred in denying his motion to dismiss at the close of the State's evidence and at the close of all the evidence based on insufficiency of the evidence. Defendant has elected not to bring forward this assignment of error. It is therefore deemed abandoned pursuant to Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure.

Lastly, defendant assigns as error the trial court's denial of his motion for mistrial on the grounds that: (1) testimony that the defendant's fingerprint was made in blood was admitted into evidence, and (2) testimony that Shade Mashburn was not the perpetrator of these crimes was admitted into evidence. The defendant has elected not to bring forward this assignment of error except as it relates to the above-referenced testimony regarding Shade Mashburn. Therefore, this assignment of error, as it relates to evidence of the fingerprint, is deemed abandoned pursuant to Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure. This assignment of error, with respect to testimony regarding Shade Mashburn as the perpetrator of these crimes, is overruled for the reasons set forth above.

For the foregoing reasons, we conclude that the defendant received a fair trial free of prejudicial error.

NO ERROR.