STATE OF NORTH CAROLINA v. WILLIE HOWARD aka JAMES SMITH

No. 525A91

(Filed 10 September 1993)

1. **Criminal Law § 98 (NCI4th)— murder documents under seal— State allowed to discover—no showing of prejudice**

    An assignment of error in a murder prosecution to the State's discovery of documents previously sealed was rejected where defendant conceded that ultimately he was not prejudiced by the entry of this order.

    **Am Jur 2d, Criminal Law §§ 598 et seq.**

2. **Constitutional Law § 248 (NCI4th)— murder—discovery— failure of witness to identify defendant not disclosed—no violation of due process**

    The failure of a prosecutor in a murder trial to disclose a witness's inability to positively identify defendant did not violate defendant's right to due process because there is not a reasonable probability that disclosure would have affected the outcome of defendant's trial. Furthermore, defendant filed a general motion for exculpatory information which did not specifically request information relating to the witness's ability to identify defendant as the assailant, the State allowed defendant open access to its entire file throughout the case, and, after hearing evidence and reviewing the record, the trial judge remained convinced of defendant's guilt beyond a reasonable doubt.

    **Am Jur 2d, Criminal Law § 774.**

3. **Criminal Law § 951 (NCI4th)— first-degree murder—motions for appropriate relief, mistrial, and dismissal—refusal to rule before sentencing hearing—not prejudicial**

    A first-degree murder defendant was not prejudiced by the court's refusal to rule on his motions for appropriate relief, mistrial and dismissal prior to sentencing where defendant contended that the ruling would have allowed him to decide whether to take the stand during the sentencing phase of his trial but the jury recommended that defendant be sentenced to life imprisonment, the least severe sentence defendant could have received.

STATE v. HOWARD

[334 N.C. 602 (1993)]

**Am Jur 2d, Coram Nobis and Allied Statutory Remedies § 59.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Wright, J., at the 22 April 1991 Criminal Session of Superior Court, Wayne County, upon a jury verdict of guilty of murder in the first degree. Heard in the Supreme Court 15 April 1993.

*Michael F. Easley, Attorney General, by Clarence J. DelForge, III, Assistant Attorney General, for the State.*

*R. Michael Bruce and Jean P. Hollowell for defendant-appellant.*

FRYE, Justice.

On 30 April 1990, defendant Willie (Willis) Howard was indicted for attempted robbery with a dangerous weapon and first-degree murder of Jerry Durham. In a capital trial the jury found defendant guilty of first-degree murder under the felony murder rule and guilty of attempted robbery with a dangerous weapon. Following a capital sentencing proceeding the jury recommended, and the trial court imposed, a sentence of life imprisonment for the first-degree murder conviction.

On direct appeal to this Court, from the imposition of his sentence of life imprisonment for the crime of murder in the first degree, defendant makes three assignments of error. After a thorough review of the record and consideration of the briefs and arguments of counsel, we conclude that defendant received a fair trial, free from prejudicial error. Thus, his conviction of first-degree murder must stand.

Evidence introduced at trial showed that late in the evening of 29 January 1990, the victim, Jerry Durham, was shot and killed in front of the Gemini West Club in Goldsboro. In addition to investigating officers, the victim's mother, and a forensic pathologist, the State presented the testimony of four eyewitnesses to the events of the evening.

Rodney Bernard Perry testified that he was at the Gemini West Club on the night Jerry Durham was shot. Perry was walking to the club when he saw two men approach the victim. The men began to scuffle and a gun fell to the ground in front of Perry. Perry quickly turned and walked back to his truck when he heard

the words "shoot him, Scatter, shoot him" and then he heard a gunshot. Perry sat in his truck and watched as the assailants drove away in a car.

Bernard Travis Gross testified that he was also present during the shooting. He knew both the victim and defendant and testified that defendant was known by the nickname "Scatter." Gross testified that the victim was attempting to sell drugs outside the club when defendant and another man approached the victim. When defendant pointed a gun at the victim, Gross entered the club but continued to watch from inside the doorway. Gross testified that the victim also had a gun but dropped it. Defendant picked up the gun and hit the victim in the face with it several times. Gross then saw an outstretched arm and heard a shot. The victim ran into the club and said, "man, he got me. He got me."

Donna Boykin testified that the victim was standing near the corner of the club when defendant and another man approached him. Defendant had a gun and told the victim this was a "stick-up." A scuffle ensued and defendant hit the victim in the face with a gun. The gun went off before it dropped to the ground. The victim then entered the club where he died.

Donald Stewart was the last eyewitness for the State. He testified to substantially the same events as Ms. Boykin and testified that defendant was the person he saw shoot the victim.

The State rested and defendant did not present any evidence. Following return of the jury verdicts a capital sentencing proceeding was held pursuant to N.C.G.S. § 15A-2000. During the capital sentencing proceeding defense counsel learned that Carla Denise Hinnant, an additional eyewitness for the State who did not testify, had failed to positively identify defendant as the assailant. On 23 May 1991 defendant filed motions for appropriate relief and for mistrial and dismissal based on the failure of the State to disclose exculpatory evidence. Defendant alleged in his motions that the State's failure to disclose Ms. Hinnant's inability to identify defendant violated defendant's right to due process. In response, the trial judge allowed defendant to call Ms. Hinnant to the stand to introduce her testimony on voir dire. In addition, after sentencing defendant to life imprisonment pursuant to the recommendation of the jury, the trial court held a lengthy hearing on defendant's motions for appropriate relief and for mistrial and dismissal. After

making findings of fact and conclusions of law, the trial court denied both motions.

[1] In his first assignment of error, defendant argues that the trial court's order of 11 January 1991 allowing the State to discover documents previously placed under seal was erroneously entered. However, defendant concedes that ultimately he was not prejudiced by the entry of this order. Because defendant cannot show prejudice as required by N.C.G.S. §§ 15A-1442 and -1443, we reject this assignment of error.

[2] By another assignment of error, defendant argues that the trial court erred in denying his motions for appropriate relief and for mistrial and dismissal. Defendant argues that he is entitled to a new trial because his right to due process was violated by the State's failure to disclose Ms. Hinnant's inability to positively identify defendant as the assailant in this case. Defendant relies on *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976), and *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), for this proposition. We conclude that the prosecutor's failure to inform defendant about Ms. Hinnant's inability or unwillingness to identify defendant as the assailant did not deprive defendant of a fair trial.

In *Brady v. Maryland*, 373 U.S. at 87, 10 L. Ed. 2d at 218, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Court elaborated on the prosecutor's duty to disclose exculpatory evidence to a defendant at trial in *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342. In *Agurs*, the Supreme Court rejected the idea that every nondisclosure should be regarded as automatic error. *Id.* at 108, 49 L. Ed. 2d at 354. Rather, the Court held that prejudicial error must be determined by examining the materiality of the evidence. *Id.; see also State v. Alston*, 307 N.C. 321, 336-337, 298 S.E.2d 631, 642 (1983).

Such evaluation must be made "in the context of the entire record." *Agurs*, 427 U.S. at 112, 49 L. Ed. 2d at 355. In defining the standard for determining materiality, the Court held that "if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." *Id.; see also United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985) (holding that "evidence is material only if there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").

In *Agurs*, the Supreme Court did not find the prosecutor's failure to disclose the victim's arrest record to defendant to be constitutional error. Defendant argued that the evidence was material because it supported his theory of self-defense by providing evidence of the victim's violent character. *Id.* After reviewing the trial court's findings in response to the defendant's motion for a new trial, the Supreme Court held that

> [s]ince the arrest record was not requested and did not even arguably give rise to any inference of perjury, since after considering it in the context of the entire record the trial judge remained convinced of [defendant's] guilt beyond a reasonable doubt, and since we are satisfied that his firsthand appraisal of the record was thorough and entirely reasonable, we hold that the prosecutor's failure to tender [the victim's] record to the defense did not deprive [defendant] of a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment.

*Agurs*, 427 U.S. at 114, 49 L. Ed. 2d at 355-56. For similar reasons, we conclude that Ms. Hinnant's inability to positively identify defendant was not material because there is not a reasonable probability that disclosure would have affected the outcome of defendant's trial. Therefore, the prosecutor's failure to disclose Ms. Hinnant's statements to defendant did not violate defendant's right to due process.

Like the Court in *Agurs*, we note that defendant in this case did not specifically request information relating to Ms. Hinnant's ability to identify defendant as the assailant. Defendant filed a request for voluntary discovery on 9 October 1990. On 22 April 1991, defendant filed a general motion for exculpatory information, which included a specific request not relevant here. However, as the Court stated in *Agurs*, a motion asking "for 'all Brady material' or for 'anything exculpatory' . . . really gives the prosecutor no better notice than if no request is made." *Id.* at 106, 49 L. Ed. 2d at 351.

Even so, in response to defendant's request for voluntary discovery, the State allowed defendant open access to its entire file throughout the case. Such access was not constitutionally or

statutorily required. *See Agurs*, 427 U.S. at 111, 49 L. Ed. 2d at 354 (rejecting "the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel"). *See also* N.C.G.S. § 15A-903 (1988). Further, after hearing evidence and reviewing the record, the trial judge remained convinced of defendant's guilt beyond a reasonable doubt. This is demonstrated by the findings and conclusions, elaborated below, in the trial court's order denying defendant's motions.

After conducting evidentiary hearings, the trial court found, *inter alia*, the following facts. Carla Denise Hinnant was a subpoenaed witness for the State in defendant's capital trial. Ms. Hinnant was present at the Gemini West Club on the night of the murder. Although she did not actually witness the murder, Ms. Hinnant saw the man who was in the altercation with the deceased from an angle. Ms. Hinnant had poor vision (approaching blindness in her left eye) and had consumed two alcoholic drinks prior to witnessing the altercation. Within twenty-four hours of the shooting Ms. Hinnant signed her name to a photographic lineup control sheet indicating her selection of a photograph of the defendant as the person who was the gunman in the altercation with the deceased. After the passage of some time, Ms. Hinnant began receiving threatening phone calls indicating that "Scatter was going to get her" and she informed the police and assistant district attorney of this. Subsequently, on a visit to the assistant district attorney's office, Ms. Hinnant indicated that she did not recognize defendant's picture. On a later occasion, upon seeing defendant in a courtroom, Ms. Hinnant told the assistant district attorney that he was not the same man that shot the victim. The State presented circumstantial evidence and three eyewitnesses who positively identified defendant as the one who shot Jerry Durham. The jury then convicted defendant of first-degree murder.

The trial court concluded that "there existed for the consideration of the jury, strong and cumulative testimony of three eyewitnesses along with circumstantial evidence that, taken together, was of an overwhelming nature pointing to the guilt of the accused." The trial court further concluded that had Ms. Hinnant testified for the defense, her testimony would have been subject to strong and cumulative impeachment evidence by the State. In light of the above, the trial court finally concluded that "there existed no reasonable probability sufficient to undermine confidence in the outcome and result of the proceedings, or that the jury's determina-

tion would in any wise have been different had this evidence been disclosed to the defense for their use." The trial court then denied defendant's motions.

As in *Agurs*, the trial court in this case remained convinced of defendant's guilt beyond a reasonable doubt after reviewing the entire record in context. *See Agurs*, 427 U.S. at 114, 49 L. Ed. 2d at 355-56. Also, as was the Court in *Agurs*, "we are satisfied that [the trial court's] firsthand appraisal of the record was thorough and entirely reasonable." *Id.* We therefore conclude that defendant's right to due process was not violated by the State's failure to disclose information relating to Ms. Hinnant's inability to identify defendant as the assailant. Thus, the trial court did not err in denying defendant's motions. We reject this assignment of error.

[3]  Defendant lastly argues that the trial court erred by refusing to rule on defendant's motions for appropriate relief and for mistrial and dismissal prior to sentencing. Defendant contends that the trial court was required to rule on such motions prior to sentencing under N.C.G.S. § 15A-1061. The ruling, defendant argues, would have allowed defendant to decide whether to take the stand during the sentencing phase of his trial. We reject this assignment of error because defendant was not prejudiced by the trial court's failure to rule on defendant's motions prior to sentencing.

Defendant was tried capitally. After the sentencing proceeding, the jury recommended that defendant be sentenced to life imprisonment. Life imprisonment is the least severe sentence that defendant could have received for his conviction of first-degree murder. N.C.G.S. § 14-17 (Supp. 1992). Therefore, defendant's sentence could not have been reduced even if defendant had chosen to testify on his own behalf at the sentencing phase of his trial. Assuming, *arguendo*, that the trial court erred in delaying its ruling until after the sentencing proceeding, such error was not prejudicial to defendant. N.C.G.S. § 15A-1443 (1988).

We conclude defendant received a fair trial, free from prejudicial error.

NO ERROR.