STATE OF NORTH CAROLINA v. CHARLES RAY SMITH

No. 174A93

(Filed 9 September 1994)

1. **Constitutional Law § 248 (NCI4th)— discovery—inability of witness to identify knife—failure to disclose—absence of prejudice—no due process violation**

The State's failure to specifically disclose, pursuant to defendant's discovery request, a witness's failure to identify a knife found on a murder victim's body as belonging to defendant three hours after the murder by shooting did not constitute prejudicial error and thus did not violate defendant's due process rights since there was no reasonable probability that disclosure would have affected the outcome of the trial where the record shows that defendant anticipated the prosecutorial theory that the knife found at the scene was a "plant" placed on the victim's body by defendant to support his self-defense claim; numerous witnesses testified that they either hunted, fished, or worked with defendant and that, to their knowledge, defendant never possessed nor would have possessed such a cheap knife as that found on the body; and with defense counsel's prior knowledge of the witness's testimony on direct and a second statement of the witness provided in discovery in which the witness did identify the knife as belonging to defendant, defense counsel was more than adequately prepared to thoroughly cross-examine the witness regarding his identification of the knife.

STATE v. SMITH

[337 N.C. 658 (1994)]

**Am Jur 2d, Criminal Law § 774.**

**Right of defendant in criminal case to inspection of statement of prosecution's witness for purposes of cross-examination or impeachment. 7 ALR3d 181.**

2. **Constitutional Law § 249 (NCI4th)— discovery—denial of motion for impeaching information—no due process violation**

Defendant's due process rights were not violated by the trial court's denial of defendant's motion for the discovery of impeaching information, including any information about any internal affairs investigation of the chief investigating officer and information as to whether a State's witness suffered from any mental defect or had a history of substance abuse, since the information requested exceeded the scope of *Brady v. Maryland*, 427 U.S. 97 (1976), and the requirements of N.C.G.S. § 15A-903, and there was no showing that the State suppressed any material evidence.

**Am Jur 2d, Criminal Law § 774.**

**Right of defendant in criminal case to inspection of statement of prosecution's witness for purposes of cross-examination or impeachment. 7 ALR3d 181.**

3. **Evidence and Witnesses § 285 (NCI4th)— murder victim's criminal history and prison infractions—no knowledge by defendant—inadmissible to show self-defense**

The trial court in a murder prosecution did not err by denying defendant's motion to permit defendant to introduce, pursuant to Rule 404(b), prior convictions of the victim for assault with a deadly weapon and burglary, forensic evaluation records from Dorothea Dix Hospital pertaining to the assault conviction, and prison records of the victim's disciplinary infractions where there was no evidence that defendant was aware of the victim's criminal past at the time of the killing, and defendant's stated purpose for offering the evidence was to show that the victim had a propensity for violence and was the aggressor in the affray which led to the fatal shooting, since Rule 404(b) expressly prohibits admission of evidence for this purpose. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence § 373.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by Greeson, J., at the 19 January 1993 Criminal Session of Superior Court, Halifax County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 31 January 1994.

*Michael F. Easley, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*Thomas Courtland Manning and Mary Boyce Wells for defendant-appellant.*

PARKER, Justice.

Defendant, Charles Ray Smith, was tried noncapitally upon a proper bill of indictment charging him with the murder of Berry LaMark Bowser, later determined to be Barry Lamont Bowser. The jury found defendant guilty of first-degree murder and the trial court entered judgment sentencing him to life imprisonment. Defendant appeals to this Court as a matter of right.

An extensive recital of the evidence introduced at trial is unnecessary to understand the dispositive issues in this case on appeal. Briefly, the State's evidence tended to show that on the evening of 3 February 1992, defendant was repairing a mobile home in the trailer park which he owned and operated in rural southwestern Halifax County. One of the residents, Grady Jefferson, was assisting him when Barry Bowser approached the two men and asked Jefferson if he knew anything about a check which was missing from his mother's mailbox. An argument ensued which resulted in defendant's asking Bowser to leave the premises. The argument became more heated and Jefferson escorted the victim off the trailer park property. However, the victim returned and began arguing with defendant again. The argument ended when defendant shot Bowser. The jury rejected defendant's defense of self-defense and recommended he be sentenced to life imprisonment for the premeditated and deliberate murder of Barry Bowser.

[1] In his first assignment of error, defendant contends the trial court erred in denying his motion to dismiss based on the State's failure to disclose impeaching information in its response to his discovery motion filed pursuant to N.C.G.S. § 15A-903(f). Defendant argues the State violated his due process rights by failing to disclose Grady

Jefferson's inability or unwillingness to positively identify defendant's knife when Jefferson was first questioned on the night of the murder.

At trial, Jefferson testified that, during the altercation, he saw defendant get a knife from his truck and that he did not see the victim with a knife until after the shooting. Prior to Jefferson's cross-examination by defense counsel, the State provided defendant with two prior statements given by Jefferson to investigating officers. The first statement, made three hours after the shooting at the scene of the crime, did not mention that Jefferson saw defendant get a knife out of his truck nor did it mention that Captain Ward had shown Jefferson a knife found on the victim's body and that Jefferson told Captain Ward he did not recognize it. The second statement, made three weeks after the shooting, was as follows:

> A. "Captain Ward, I have been thinking a lot about what happened that night. Every time I lay down and go to sleep I think about it. That knife you showed me, I've seen Charles Smith with that knife while I was helping him work on some trailers. He used it to cut wires and tape and insulation. I've seen him use it a couple of times. Sometimes he would use his big hunting knife if he had it with him. If he didn't have the big knife, he would use the knife you showed me. He kept the big knife in his truck most of the time."

Captain Ward testified that at the close of the first interview he showed Jefferson the knife found in the victim's hand and asked Jefferson if he could identify it, and Jefferson said that he could not. In denying defendant's motion, the trial court stated that the information had come out in time for defendant to use it in court and allowed defendant to recall Jefferson if defendant wished.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218 (1963). The Supreme Court of the United States, in *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976), rejected the notion that every nondisclosure automatically constitutes reversible error and ruled "that prejudicial error must be determined by examining the materiality of the evidence." *State v. Howard*, 334 N.C. 602, 605, 433 S.E.2d 742, 744 (1993). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985).

We note first that whether or not the prosecutor knew prior to Captain Ward's testimony that Jefferson had failed to identify the knife on the evening of 3 February 1992 is irrelevant. Captain Ward, the lead investigator who testified at trial, had knowledge of this information; thus, the State is deemed under *Brady* to have had knowledge of the information as well. *See State v. Crews*, 296 N.C. 607, 616, 252 S.E.2d 745, 752 (1979) (holding that within possession of State as used in N.C.G.S. § 15A-903(d) and (e) means within possession, custody, or control of the prosecutor or those working in conjunction with him or his office); *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218 (explaining that suppression by prosecution of evidence favorable to an accused violates due process where the evidence is material, irrespective of the good faith or bad faith of the prosecution).

"In determining whether the suppression of certain information was violative of the defendant's right to due process, the focus should not be on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, but rather should be on the effect of the nondisclosure on the outcome of the trial." *State v. Alston*, 307 N.C. 321, 337, 298 S.E.2d 631, 642 (1983). The defendant has the burden of showing that the evidence not disclosed was material and affected the outcome of the trial. *Id.* While we agree that Jefferson's failure to positively identify the knife only three hours after the murder is relevant to defendant's theory of self-defense, we find that defendant has failed in this instance to show how he was prejudiced by the nondisclosure of this information. The record discloses that defendant anticipated the prosecutorial theory that the knife found at the scene was a "plant" placed on the victim's body by defendant to support his claim of self-defense. Numerous witnesses were called to testify that they either hunted, fished, or worked with defendant and that, to their knowledge, defendant never possessed nor would he ever possess such a cheap knife as State's Exhibit No. 7. With this prior knowledge, Jefferson's testimony on direct that he did not remember the knife when he first spoke with Captain Ward and the two statements provided by the State, defense counsel was more than adequately prepared to thoroughly cross-examine Jefferson regarding his identification of the knife.

In light of the foregoing principles, we conclude that the State's failure to specifically disclose Jefferson's previous failure to identify the knife as belonging to defendant does not constitute prejudicial error since there is no reasonable probability that disclosure would have affected the outcome of defendant's trial. *See also State v. Howard*, 334 N.C. at 606, 433 S.E.2d at 744 (holding that the State's failure to disclose a witness' previous "inability to positively identify defendant [as the assailant] was not material because there [was] not a reasonable probability that disclosure would have affected the outcome of defendant's trial"). We, thus, reject this assignment of error.

[2] In a related assignment of error, defendant contends the trial court erred when it denied his pretrial motion for disclosure of impeaching information. In his motion defendant requested documentation of any internal investigation of any law enforcement officer whom the State intended to call to testify at trial and records revealing any defect or deficiency of capacity of any witness to observe, remember, or recount events. During the hearing on the motion, defense counsel informed the court he had hearsay information concerning possible discipline the chief investigator may have received as a result of an internal affairs investigation prior to his employment with the Halifax County Sheriff's Department. The State countered that the request went beyond the scope of *Brady*, that all the categories of discovery under N.C.G.S. § 15A-903 had been complied with, and that the State was not in possession of any of the records sought by defendant. The trial court ruled that prior to its requiring the State to produce any information pertaining to an internal affairs investigation, a *voir dire* of the witness could be conducted, upon request, to determine if any potentially impeaching evidence existed, was relevant, and was admissible.

Following the direct examination of Linda Tyler, a witness who was present at the trailer park on the night of the shooting, defendant renewed his motion for disclosure of impeaching information as to whether this witness suffered from any mental defect or history of substance abuse which might affect her ability to recollect or recount the events occurring on the evening of 3 February 1992. In denying the motion, the court noted that counsel could question the witness concerning these matters, within reason, but refused to order the State to make inquiry into the background of its witnesses.

Defendant contends his specific requests for discovery triggered the State's duty to determine if any such impeachment evidence

existed and, if so, to disclose the information to the defense. Defendant argues that the State's failure to do so violated defendant's right to due process. We disagree.

To prevail under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), defendant must first show that evidence favorable to the accused was actually suppressed and that the suppressed evidence was material either to guilt or punishment such that there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *See also United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976). Nothing in the record before us reveals that the State suppressed material evidence. The State informed both the court and defendant that it had produced all discoverable materials in its possession, and defendant has failed to show otherwise.

Moreover, the information requested exceeds the scope of *Brady* and the requirements of N.C.G.S. § 15A-903. The State is not required to conduct an independent investigation to determine possible deficiencies suggested by defendant in State's evidence. Such exploration could result in time being wasted on frivolous fishing expeditions not necessary to the State's prosecution of the charges against defendant. In the instant case, defendant's motion was nothing more than a fishing expedition for impeachment evidence and the trial court properly disallowed the motion. *See State v. Brewer*, 325 N.C. 550, 574, 386 S.E.2d 569, 583 (1989), *cert. denied*, 495 U.S. 951, 109 L. Ed. 2d 541 (1990); *State v. Alston*, 307 N.C. 321, 337, 298 S.E.2d 631, 643 (1983). This assignment of error is overruled.

[3] Finally, defendant assigns error to the trial court's denial of his motion, pursuant to Rule 404(b) of the North Carolina Rules of Evidence, to allow evidence tending to show that the victim was the aggressor on the night of the shooting. Specifically, defendant sought to introduce the following: (i) a prior conviction of Bowser for assault with a deadly weapon in 1983, (ii) forensic evaluation records from Dorothea Dix Hospital pertaining to Bowser's 1983 conviction, (iii) records from the North Carolina Department of Corrections regarding Bowser's disciplinary infractions, and (iv) three prior convictions for burglary in 1988 and 1989 in New Jersey. Defendant argued that this evidence was relevant to the issue of whether Bowser was the aggressor in the altercation and the state of mind of defendant after Bowser threatened to attack him in the same manner he had attacked another on a prior occasion. The trial court ruled as follows:

First of all, this Court feels that the acts offered by the defendant in defendant's voir dire exhibits of #1 through #5 are not similar enough individually or collectively in representation of the conduct of the deceased in order to indicate any type of . . . pattern of acts that would establish that the deceased was the aggressor on February the 3rd of 1992. In other words, there is no commonality between the offered prior acts nor the acts of the deceased's conduct on February the 3rd, 1992, and, therefore, are not relevant.

Further, all the acts are individually, too remote in time to establish a commonality between the individual acts and the deceased's conduct on February the third. And collectively they do not establish any modus operandi nor signature of similar conduct indicating the deceased was the aggressor on February the 3rd of 1992, and, therefore, [are] also [ir]relevant on that basis.

It's the Court's feeling that the acts when considered individually and collectively are offered to show that the deceased had a propensity for violence and, therefore, must have been the aggressor, and the Court feels that the commentary to Rule 404(b) infers that according to the North Carolina Supreme Court in State v. Morgan at page 638, that evidence of a violent disposition to prove that a person was the aggressor in an affray is an impermissible use of evidence of other crimes and, therefore, not admissible under 404(b).

Further, this Court finds that even assuming, which the Court rules that it didn't, but even assuming that these acts individually or collectively were relevant and were admissible under 404(b), which the Court has held that they aren't, this Court finds that the probative value of these proffered exhibits, individually and collectively, is far outweighed by the prejudicial effect of their admissibility and their admission. And that they would only serve to show to the jury that the deceased was somewhat less worthy of living than someone who hadn't performed these relevant acts.

Rule 404(b) of the North Carolina Rules of Evidence provides:

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as

> proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1992). This rule is "a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

In determining that the evidence was not relevant for any of the listed purposes under Rule 404(b), the trial court was correctly governed by *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986). Defendant had asserted that the evidence went directly to defendant's state of mind during the confrontation and was, thus, admissible. However, no showing was made that defendant was aware of Bowser's criminal past; hence, the fact that Bowser had assaulted a man nine years earlier or had committed burglary four years earlier "has no tendency . . . to make the existence of [defendant's] belief as to the apparent necessity to defend himself from an attack 'more or less probable than it would be without the evidence.' " *Morgan*, 315 N.C. at 639, 340 S.E.2d at 92, quoting N.C.G.S. § 8C-1, Rule 401. Had the evidence defendant sought to have admitted been to the effect that Bowser had pointed a gun at or threatened defendant in the recent past, such evidence would more likely have been relevant to support defendant's theory that Bowser was the aggressor in the affray and that defendant reacted justifiably in self-defense. *Morgan*, 315 N.C. at 639, 340 S.E.2d at 92 (holding that had the State's evidence shown defendant had pointed a gun at or threatened the victim at an earlier date, "such evidence would more likely be relevant as tending to show a plan or design or as negating defendant's claim the [victim's] attack on [defendant] was unprovoked").

Defendant's own stated purpose for offering the evidence was to show that Bowser, based on his prior crimes and other wrongful acts, was more likely the aggressor in the affray which led to the fatal shooting. Defendant was endeavoring to show that since Bowser had a history of criminal convictions and disciplinary infractions, he had a propensity for violence; therefore, he must have been the aggressor in the altercation with defendant. Rule 404(b) expressly prohibits admission of evidence for this purpose. The trial court did not err in

disallowing the evidence, and this assignment of error is without merit.

We conclude defendant received a fair trial, free from prejudicial error.

NO ERROR.