IN THE SUPREME COURT OF NORTH CAROLINA

No. 225A24

Filed 22 May 2026

STATE OF NORTH CAROLINA

v.

BLAINE DALE HAGUE


Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 295 N.C. App. 380 (2024), reversing and vacating a judgment entered on 9 December 2022 by Judge David L. Hall in Superior Court, Iredell County, and remanding the case for a new trial. On 23 May 2025, the Supreme Court allowed defendant's petition for discretionary review. Heard in the Supreme Court on 29 October 2025.

*Jeff Jackson, Attorney General, by Jeremy D. Lindsley, Assistant Attorney General, for the State-appellant.*

*Sandra Payne Hagood, for defendant-appellee.*

RIGGS, Justice.

On 9 December 2022, a jury convicted Blaine Dale Hague of first-degree murder for the killing of Thomas "Tommy" Cass. Mr. Hague alleged that he acted in self-defense after Mr. Cass pushed him to the ground, grew angry, and reached into his vest. At trial, Mr. Hague sought to enter evidence of Mr. Cass's prior felony convictions to demonstrate that Mr. Hague reasonably feared for his life when he

acted in self-defense. The trial court granted the State's motion in limine preventing the admission of evidence of Mr. Cass's prior felony convictions under Rule 404(a)(2) and Rule 404(b) of the Rules of Evidence. The Court of Appeals held that the trial court erred by denying Mr. Hague's motion to dismiss the charge of first-degree murder because the State did not meet its burden to prove premeditation and deliberation, did not err by omitting a stand-your-ground jury instruction, and prejudicially erred by excluding evidence of Mr. Cass's prior felony convictions. *State v. Hague*, 295 N.C. App. 380, 400–01 (2024). The Court of Appeals remanded the case to the trial court so that Mr. Hague could receive a new trial.

We hold that the trial court prejudicially erred by excluding the Rule 404(b) evidence of Mr. Cass's prior felony convictions and remand to the trial court for a new trial. We dismiss review of the jury instruction issue as improvidently allowed and do not reach whether the trial court erred by denying Mr. Hague's motion to dismiss.

## I.    Factual and Procedural Background

On 7 September 2020, Blaine Dale Hague shot and killed Thomas "Tommy" Cass. That morning, Mr. Cass, his son, and several friends met at a cornfield to hunt doves. Mr. Hague lived near the cornfield, where he operated a horse rescue farm. While neither the men in the hunting party nor Mr. Hague owned the cornfield, Mr. Cass had permission to hunt there—on the day of the shooting, Mr. Cass had a note in his wallet with written permission from the owner of the field to hunt on the property.

Mr. Hague and Mr. Cass had several previous interactions. In 2017, Mr. Cass was among a group of hunters in the cornfield when someone in the hunting party shot one of Mr. Hague's horses twice. Mr. Hague asked the hunters to proceed with greater caution so as to not shoot his horses or spook them, which could cause fatal injuries. Mr. Hague testified that he and Mr. Cass would always acknowledge each other when Mr. Cass hunted. Additionally, about a year before the shooting, the men encountered each other at a Subway restaurant. Mr. Hague testified he left the restaurant to de-escalate the situation because Mr. Cass was having a "bad-day attitude" and making aggressive comments. Then, Mr. Cass's wife testified that, at a 7-Eleven about a week before the 7 September incident, Mr. Hague told Mr. Cass that he was not allowed to hunt in the cornfield but that Mr. Cass "basically laughed it off" and was not angry at Mr. Hague.

On 7 September, Mr. Hague heard gunshots and his horses running. As was "automatic for [him] for the last 50 years," he put his gun in his back pocket before leaving the house to check on the situation. He then drove to the cornfield and spoke with Mr. Cass's son. Mr. Cass's son testified that Mr. Hague seemed angry and asked if he was there with Mr. Cass. Mr. Cass's son told Mr. Hague they had permission to hunt in the cornfield, to which Mr. Hague replied they "didn't have permission to shoot his horses."

Mr. Hague testified he tried to get the hunting party's attention without crossing onto the land, but they did not look over, so he walked to them. Mr. Hague

approached one of Mr. Cass's friends and asked him to move because the horses were spooked; his friend explained that Mr. Cass had permission to hunt there. Mr. Hague said, "Oh, I know Tommy" and walked towards Mr. Cass. Another of Mr. Cass's friends testified that Mr. Cass, who had just shot at doves twice, put his gun down and walked quickly towards Mr. Hague with his hands empty, seeming angry. The two men stopped "face to face" with each other.

One of Mr. Cass's friends testified that Mr. Cass said, "[E]very time I come over here hunting you come over here f***ing with me." Mr. Cass raised his hands and pushed Mr. Hague with both open palms. Mr. Hague fell onto his back and slid backwards. Mr. Cass's friends testified that Mr. Hague was able to stand within a few seconds. However, Mr. Hague testified that he struggled to get up for about ten seconds and explained that he had several preexisting health conditions, including a torn Achilles tendon on his left leg, right torn rotor cuff, "bum right leg," bulging disc in his spine, vertigo, and diabetes. He was also using a cane and had a large walking cast from his ankle to his knee. Mr. Cass was forty-six years old, and Mr. Hague was seventy-one.

Mr. Hague testified that Mr. Cass initially walked away after pushing him, but spun around after Mr. Hague said "This is a classic felony, assault on a disabled veteran and a senior citizen." Mr. Hague testified that Mr. Cass was angry and came back to him, saying, "I'm done," then put his right hand into the pocket area of his vest. When he saw Mr. Cass reach into his vest pocket, Mr. Hague believed he was

taking out a handgun and felt fear that he had "never felt since Vietnam." Mr. Hague pulled his gun out of his pocket and shot Mr. Cass once.

On the contrary, Mr. Cass's friend testified that Mr. Hague immediately extended his arm with his gun when he got off the ground; Mr. Cass raised his hands and said, "[N]o . . . [w]hoa, wait a minute, wait a minute"; and Mr. Hague fired one shot. He testified that Mr. Hague walked off the cornfield immediately after firing the shot. Members of the hunting party called 911 and asked Mr. Hague his name. Mr. Hague identified himself, drove home, and made his own 911 call.

Mr. Hague was indicted for first-degree murder on 30 September 2020. His trial began on 5 December 2022. He moved to dismiss the first-degree murder charge on the basis that there was insufficient evidence of premeditation and deliberation. The trial court denied his motion to dismiss. Mr. Hague also requested a stand-your-ground jury instruction, which the trial court denied.

The State filed a motion in limine to exclude character evidence, namely evidence of Mr. Cass's prior felony convictions for simple possession of cocaine in 2005 and felony assault inflicting serious bodily injury in 2009. Mr. Hague knew of Mr. Cass's status as a felon, and that Mr. Cass would hunt with a shotgun and occasionally carry a pistol, but Mr. Hague did not know Mr. Cass's specific felony convictions. Defense counsel argued that Mr. Hague's knowledge that Mr. Cass carried a firearm despite his felony conviction "underpins whether or not some of this fear on September the 7th, 2020, was reasonable." While the State's motion in limine

sought to exclude the evidence under Rule 403 and Rule 404, the trial court took the motion under advisement before trial, then considered the motion under Rule 404(a)(2) and Rule 404(b). The trial court allowed the State's motion in limine and found that the evidence of Mr. Cass's felony convictions was inadmissible to show the jury that Mr. Cass, in the trial court's words, "must have been the aggressor here because he's a bad fellow because he had been convicted of a felony or, because he is a felon, he shouldn't have been carrying a gun." Defense counsel entered a continuing objection to that ruling to preserve the issue for appellate review.

Pursuant to the trial court's ruling, the State also requested that a portion of Mr. Hague's 911 call be redacted. The trial court agreed to redact portions of the 911 call that discussed Mr. Cass's felony convictions. In the full call, the 911 operator asked, "And y'all have had this issue before in previous years?" to which Mr. Hague replied, "No. No. I've known Tommy. He's a felon. When I was a detention officer at Iredell County, he was also my neighbor at one time. And I've always known he hunts illegally, and I could have called the law on him a million times, and I didn't." Once the call was redacted, the jury heard only, "And y'all have had this issue before in previous years? . . . [H]e was also my neighbor at one time. And I've always known he hunts illegally, and I could have called the law on him a million times, and I didn't."

Mr. Hague argued self-defense at trial, claiming that when he fired his gun, he reasonably believed that Mr. Cass was reaching for a handgun to shoot him. On 9

December 2022, the jury found Mr. Hague guilty of first-degree murder and sentenced him to life without parole. Mr. Hague gave oral notice of appeal.

The Court of Appeals upheld the trial court's decision as to the stand-your-ground jury instruction but held that the trial court erred by denying Mr. Hague's motion to dismiss and excluding Mr. Cass's prior felony convictions. *Hague*, 295 N.C. App. at 400–01. The Court of Appeals reversed and vacated Mr. Hague's judgment and remanded the case to the trial court for a new trial. *Id.* at 401. Judge Stading concurred with the majority's decision regarding the jury instructions but dissented as to the other two issues. *Id.* at 401 (Stading, J., concurring in part and dissenting in part). Judge Stading would have held that there was sufficient evidence of premeditation and deliberation to survive a motion to dismiss and that the trial court did not err by excluding Mr. Cass's prior felony convictions. *Id.*

On 20 September 2024, the State filed a notice of appeal based on Judge Stading's dissent pursuant to N.C.G.S. § 7A-30(2). Mr. Hague filed a petition for discretionary review under N.C.G.S. § 7A-31 as to the jury instruction issue. This Court allowed his petition on 23 May 2025.

## II. Analysis

### A. Standard of Review

When reviewing the trial court's decision, "[w]e review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130 (2012). If the trial court erred in its 404(b)

analysis, the Court must determine whether that error was prejudicial. *State v. Pabon*, 380 N.C. 241, 260 (2022). The defendant has the burden to prove that the error was prejudicial—that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (2025). This Court reviews determinations under Rule 403 for abuse of discretion. *Beckelheimer*, 366 N.C. at 130.

## B. The Trial Court Prejudicially Erred by Excluding Evidence of Mr. Cass's Prior Felony Convictions Under Rule 404(b)

"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ." N.C.G.S. § 8C-1, Rule 404(a) (2025). In limiting its uses, "[g]enerally, Rule 404 acts as a gatekeeper against 'character evidence.' " *Pabon*, 380 N.C. at 258. The trial court here considered whether testimony about Mr. Cass's prior felony convictions was admissible under Rule 404(a)(2) and Rule 404(b). Character evidence is admissible in self-defense cases if it is "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]" N.C.G.S. § 8C-1, Rule 404(a)(2). And under Rule 404(b),

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (2025).  The trial court erred by excluding evidence of

Mr. Cass's prior felony convictions under Rule 404(b), and that error was prejudicial.

Rule 404(b) is a "clear general rule of inclusion of relevant evidence of other

crimes, wrongs[,] or acts by a defendant." *State v. Coffey*, 326 N.C. 268, 278–79 (1990)

(emphasis omitted).  As a rule of inclusion, character evidence is admissible under

Rule 404(b) unless its only probative value is to show conformity with or propensity

to commit similar actions.  *Id.*; *see also State v. Bagley*, 321 N.C. 201, 206 (1987)

("Thus, even though evidence may tend to show other crimes, wrongs or acts by the

defendant and his propensity to commit them, it is admissible under Rule 404(b) so

long as it also 'is relevant for some purpose other than to show that defendant has

the propensity for the type of conduct for which he is being tried.' " (emphasis omitted)

(quoting *State v. Morgan*, 315 N.C. 626, 637 (1986))).  Although much of the language

around Rule 404(b) describes whether prior conduct of a "defendant" is admissible,

Rule 404(b) applies to other entities, including the victim.[1]

Under Rule 404(b), "[t]he evidence of the victim's prior bad acts would be

impermissible character evidence if its only relevance was to the victim's behavior at

---

[1] When a defendant's prior acts are subject to Rule 404(b), we apply a "safeguard" requiring similarity and temporal proximity between the prior act and the charged crime. *State v. Gillard*, 386 N.C. 797, 811 (2024).  However, here, the similarity and temporal proximity requirement is not applicable because the inquiry is not about whether Mr. Cass's previous crimes were similar to his actions on the day of the shooting, but it is instead about whether Mr. Hague's state of mind was reasonable in light of his knowledge of Mr. Cass's prior convictions and the illegality of Mr. Cass's possession of a firearm.

the time of the shooting.  However, because the evidence is relevant to the defendant's state of mind, *it is not prohibited by Rule 404(b)*."  *State v. Jacobs*, 363 N.C. 815, 823 (2010) (emphasis added) (citing *State v. Gibson*, 333 N.C. 29, 42 (1992), *overruled on other grounds by, State v. Lynch*, 334 N.C. 402, 409–10 (1993)).  "[W]hen character or a trait of character of the victim is an essential element of the defense, a defendant may also offer proof of specific instances of the victim's conduct."  *Jacobs*, 363 N.C. at 822.  Evidence that "relate[s] directly to defendant's state of mind . . . necessarily bear[s] upon and forcefully support[s] key elements of the primary offense charged."  *Gibson*, 333 N.C. at 42.  Rule 404(b) evidence can support a defendant's self-defense claim because "(1) defendant's knowledge of the victim's past at the time of the shooting is relevant to defendant's mental state; and (2) the light this knowledge cast on the victim's character could make it more likely that the victim acted in a way that warranted self-defense."  *Jacobs*, 363 N.C. at 822.  Even though this purpose is not in the language of Rule 404(b), the list in Rule 404(b) is not exclusive—"evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused."  *State v. Weaver*, 318 N.C. 400, 403 (1986) (citing 1 *Brandis on North Carolina Evidence* § 91 (1982)); *Bagley*, 321 N.C. at 206.  Prior conduct is admissible under Rule 404(b) if it is relevant to the defendant's state of mind.  *Jacobs*, 363 N.C. at 823.

Here, defense counsel argued that Mr. Hague's knowledge of Mr. Cass's felony convictions "underpins whether or not some of this fear on September the 7th, 2020,

was reasonable." Rather than solely demonstrating that Mr. Cass acted in conformity with his felony convictions, Mr. Hague sought to testify that he knew Mr. Cass regularly carried a pistol and hunted with a firearm, despite being prohibited to do so as a person with a felony conviction. In addition to the prior knowledge of his firearm possession and use, including when a member of Mr. Cass's hunting party shot Mr. Hague's horse, Mr. Hague knew Mr. Cass was hunting with a firearm that very day, since Mr. Cass shot at doves twice while Mr. Hague was talking to other members of the hunting party.

Because Mr. Hague claimed self-defense, defense counsel argued that the jury had to know about Mr. Cass's prior felony convictions to "be placed in the position that . . . defendant was" and understand Mr. Hague's state of mind at the time of the shooting. Defense counsel argued that the prior convictions went to whether Mr. Hague acted reasonably in self-defense, because he would have known "that Mr. Cass was a felon" and, because he was using a firearm to hunt, "was therefore committing a felony that day in the field." Further, defense counsel claimed that Mr. Hague knew Mr. Cass had "a pattern of just . . . ignoring certain parts of the law, as it relate[d] to firearms." Defense counsel argued Mr. Hague knew that Mr. Cass was hunting with firearms he could not legally possess, and therefore Mr. Hague had heightened fear because he knew that Mr. Cass was willing to flaunt firearm laws.

This position is distinct from an argument that Mr. Hague generally feared Mr. Cass because of Mr. Cass's prior felony convictions. Similarly, Mr. Hague is not

arguing that he feared for his life after encountering Mr. Cass on the street or in the grocery store, locations where Mr. Cass may not have access to a firearm. Mr. Hague argues that he feared for his life in an encounter with Mr. Cass where Mr. Cass was undoubtedly in possession of and using a gun for hunting. For the jury to fully understand Mr. Hague's state of mind when he encountered Mr. Cass and the hunting party, it was necessary for the jury to know what Mr. Hague knew about Mr. Cass's prior convictions. Because Mr. Hague intended to introduce Mr. Cass's felony convictions to prove his state of mind, not to prove Mr. Cass acted in conformity with his prior drug possession and assault convictions, the trial court erred by excluding the evidence under Rule 404(b).

We further note that Mr. Hague's lack of knowledge of the specific felony convictions does not defeat his 404(b) argument. If a defendant is not aware of the victim's criminal past, the victim's past crimes "ha[ve] no tendency . . . to make the existence of [defendant's] belief as to the apparent necessity to defend himself from attack 'more or less probable than it would be without the evidence.' " *State v. Smith*, 337 N.C. 658, 666 (1994) (second and third alterations in original) (quoting *Morgan*, 315 N.C. at 639). However, where, as here, the defendant uses the prior violent acts to prove his state of mind, he must "show that he was aware of the prior act and that his awareness somehow was related to the killing." *State v. Strickland*, 346 N.C. 443, 456 (1997) (citing *Smith*, 337 N.C. at 666)). Mr. Hague knew that Mr. Cass had prior felony convictions and used firearms despite being prohibited from doing so. His

awareness of the felony convictions informed his state of mind at the time he killed Mr. Cass and provided the evidence of Mr. Hague's understanding of a character trait of Mr. Cass—the willingness to break the law by illegally possessing a firearm. Therefore, even though he did not know the specific felony convictions, the fact that Mr. Hague knew about the convictions and weapons possession made the prior convictions still sufficiently relevant to his state of mind to be admissible under Rule 404(b).

Mr. Hague's state of mind at the time of the shooting and whether Mr. Cass's prior felony convictions made Mr. Hague's fear of Mr. Cass reasonable were questions for the jury. The trial court erred by excluding evidence of Mr. Cass's prior felony convictions.

If an appellate court determines that a trial court erred as to Rule 404(b) evidence, then it must analyze whether that error was prejudicial. *Pabon*, 380 N.C. at 260. An error is prejudicial "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a). The defendant bears the burden to prove prejudice. *Id.*

When a defendant alleges self-defense, the "proper inquiry . . . focuses on the reasonableness of defendant's belief as to the apparent necessity for, and reasonableness of, the force used to repel an attack upon his person." *Morgan*, 315 N.C. at 639 (citing *State v. Gladden*, 279 N.C. 566 (1971)). The reasonableness of the

defendant's actions is a "critical component of self-defense." *State v. Lee*, 370 N.C. 671, 675 (2018).

Here, the parties dispute the exact chain of events between when Mr. Cass pushed Mr. Hague and when Mr. Hague shot Mr. Cass, including how quickly Mr. Hague reacted. In a "credibility contest" with "little or no physical or corroborating evidence of the incident in question," "any evidence of prior acts that tends to bolster or undermine the credibility of one of the primary participants may be particularly influential in the ultimate outcome." *Pabon*, 380 N.C. at 260–61 (citing *State v. Scott*, 331 N.C. 39, 46 (1992)).

The trial court redacted Mr. Hague's 911 call in a way that fundamentally changed how the jury perceived what was happening. In addition to misrepresenting by omission the entirety of the evidence, the redactions to the 911 call misled the jury as to Mr. Hague's credibility and state of mind. In the unredacted call, the 911 dispatcher asked, "And y'all have had this issue before in previous years?" and Mr. Hague replied, "No. No. I've known Tommy. He's a felon. When I was a detention officer at Iredell County, he was also my neighbor at one time. And I've always known he hunts illegally, and I could have called the law on him a million times, and I didn't." However, because the trial court excluded evidence of Mr. Cass's felony convictions, the jury heard only, "And y'all have had this issue before in previous years? . . . [H]e was also my neighbor at one time. And I've always known he hunts illegally, and I could have called the law on him a million times, and I didn't."

People who are convicted of felonies are not allowed to possess firearms in North Carolina. *See* N.C.G.S. § 14-415.1(a) (2025). In the full 911 call, Mr. Hague says that Mr. Cass hunted illegally because he was a felon, but that he never called the police to report him. However, when the 911 call was redacted, Mr. Hague's allegation that Mr. Cass hunted illegally stayed in without context for the jury to understand why Mr. Hague believed Mr. Cass hunted illegally. The jury could have inferred from the redacted call that Mr. Hague meant that Mr. Cass was hunting illegally because he was trespassing on land where he was not permitted to hunt. However, evidence presented at trial indicated that Mr. Cass had a permission note and hunting license in his wallet, so was neither trespassing nor hunting without proper documentation. Therefore, without full context from the 911 call about why Mr. Hague believed Mr. Cass was hunting illegally, the jury may have found Mr. Hague less credible because, from its perspective, he may have claimed without support that Mr. Cass hunted illegally. This reduced credibility created a reasonable possibility that the jury did not find Mr. Hague's self-defense claim convincing but would have if it had the full context of the 911 call.

Similarly, the redacted 911 call could have misled the jury about Mr. Hague's state of mind by encouraging the jury to believe that Mr. Hague bore animosity against Mr. Cass for hunting on the cornfield. The 911 dispatcher asked Mr. Hague if he and Mr. Cass "had this issue before in previous years." In the full 911 call, Mr. Hague responded "No. No. I've known Tommy." However, when the 911 call was

redacted, the jury heard Mr. Hague respond, "[H]e was also my neighbor at one time. And I've always known he hunts illegally, and I could have called the law on him a million times, and I didn't." The redaction changed Mr. Hague's response so that the jury did not hear Mr. Hague's contemporaneous denial of this issue. Instead, despite Mr. Hague's actual conversation with the 911 dispatcher, the redactions misrepresented to the jury that Mr. Hague was talking about Mr. Cass shooting near his horses and that he had a general animosity toward Mr. Cass. The redaction could have significantly changed the jury's perception of Mr. Hague's state of mind. Therefore, when presented with the 911 call in full, without redactions, the jury could have reasonably believed that Mr. Hague acted in self-defense. The redaction of the 911 call was a prejudicial error because it reduced Mr. Hague's credibility to the jury and changed its perception of his state of mind. Thus, the trial court prejudicially erred in excluding testimony about Mr. Cass's prior felony convictions.

"Once a trial court determines that the requirements of Rule 404(b) have been met, it must then 'balance the danger of undue prejudice against the probative value of the evidence, pursuant to Rule 403.'" *State v. Gillard*, 386 N.C. 797, 811 (2024) (quoting *State v. Carpenter*, 361 N.C. 382, 388–89 (2007)). "We review a trial court's Rule 403 determination for abuse of discretion and will only disturb it when it is 'manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *Id.* at 816 (quoting *State v. Richardson*, 385 N.C. 101, 133 (2023)). Under Rule 403, relevant evidence "may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice." N.C.G.S. § 8C-1, Rule 403.

However, upon careful review of the trial transcript, it is not clear that the Court of Appeals was correct that the trial court "engaged in the Rule 403 balancing test and recognized the potential for prejudice." *See Hague*, 295 N.C. App. at 400. And notwithstanding the Court of Appeals' reasoning, the State did not argue that the trial court abused its discretion under Rule 403 at the Court of Appeals. Arguably, because the trial court excluded the evidence under Rule 404, it did not need to conduct a Rule 403 analysis, and it did not make an explicit determination as to whether the evidence should be excluded under Rule 403. Thus, it is improper for us to address Rule 403 arguments here. Because this case will be remanded for a new trial, we leave it to the trial court to determine whether this evidence should be excluded under Rule 403.

## III. Conclusion

The trial court prejudicially erred by excluding evidence of Mr. Cass's prior felony convictions under Rule 404(b), so Mr. Hague is entitled to a new trial. The issue of whether the Court of Appeals erred by affirming the trial court's refusal to instruct the jury on the stand-your-ground doctrine is dismissed as improvidently allowed. Because Mr. Hague will receive a new trial on the evidentiary issue, we do not need to reach whether the State supplied evidence of premeditation and deliberation sufficient enough to survive Mr. Hague's motion to dismiss the charge of

first-degree murder.  We dismiss Mr. Hague's motion to expedite consideration and issuance of an opinion, filed 10 February 2026, and motion to expedite consideration and issuance of an opinion due to new and compelling circumstances, filed 11 May 2026, as moot.

MODIFIED AND AFFIRMED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED.

Justice BARRINGER concurring.

I concur with the majority's holding that it was prejudicial error for the trial court to exclude evidence that defendant knew the victim was a felon. I write separately to partially address the State's argument that there was sufficient evidence of premeditation.

In attempting to prove premeditation, the State relies in large part on the fact that defendant had a pistol on him during the encounter. Such a fact would convincingly evince premeditation only if it had indicated that defendant had "anticipated" that, *in the immediate future*, there would be "a violent confrontation and the potential need for deadly force." *See State v. Bell*, 338 N.C. 363, 389 (1994) (holding there to be sufficient evidence of premeditation when, among several other factors, the defendant had "read[ied] [his] weapon for firing" while en route to a meeting with the victim by "remov[ing] the clip from his semiautomatic pistol, eject[ing] the round from the chamber, replac[ing] the round in the clip, reinsert[ing] the clip, and chamber[ing] a live round of ammunition"). Here, though, it did not.

Instead, defendant testified during cross-examination that "I . . . always put [my] pistol in my back pocket, no matter where I'm going." "It [has been] automatic for me for the last 50 years, since Vietnam . . . ." The habit is so strong that "[s]ometimes, by accident, when I go to the bank, I don't even think about it, and it's there in my back pocket."

Preparedness is not always evidence of premeditation. Premeditation can, of course, be shown by a defendant's preparation to commit a specific murder, but only if the preparation is sufficiently connected to the murder. A defendant's routine preparedness to defend himself on any given day is not, in and of itself, sufficient evidence of preparation to commit a murder. To extrapolate premeditation from such rote conduct is to engage in the kind of speculation that dismissal is meant to prevent.

Justice ALLEN joins in this concurring opinion.

Justice BERGER dissenting.

Law students are often reasonably confused by classes concerning character evidence. Those students will want to avoid the majority opinion and stick with their own flow charts.

The majority holds that the trial court erred in excluding evidence under Rule 404(b). But the majority's amorphous approach to the Rules of Evidence here is confusing and wrong, and Rule 404(b) does not allow this evidence to be admitted. Based upon the record here and a proper understanding of the interaction of Rules 404 and 405, I would reverse the Court of Appeals and affirm the trial court. I respectfully dissent.

The trial court properly excluded evidence of the victim's prior felony convictions under Rule 404(b) despite defendant's self-defense claim. The majority concludes that defendant's purported knowledge that the victim was a convicted felon and his belief that the victim carried firearms constituted permissible 404(b) evidence to demonstrate defendant had a reasonable belief the victim posed a threat of death or great bodily harm. This conclusion sanctions the use of propensity evidence and is contrary to the Rules of Evidence and our prior holdings.

Subject to enumerated exceptions, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." N.C.G.S. § 8C-1, Rule 404(a) (2025).

This rule applies equally to victims and defendants. One exception allows for the admission of pertinent character traits of victims. *See* N.C.G.S. § 8C-1, Rule 404(a)(2); *see also State v. Bass*, 371 N.C. 535, 543 (2018) ("A criminal defendant may . . . introduce evidence of a victim's pertinent character traits.").

This subsection "creates an exception to permit an accused to introduce pertinent evidence of character of the victim and to permit the prosecution to introduce similar evidence in rebuttal of the character evidence." Commentary, N.C.G.S. § 8C-1, Rule 404(a)(2). Thus, Rule 404(a)(2) would have been the appropriate rule through which defendant could have attempted to admit this evidence, not Rule 404(b). It is this subsection that permits evidence tending to show a defendant had a "reasonable apprehension of death or bodily harm [or that the victim was the first aggressor], rather than to prove that the victim acted in conformity with his character trait on a particular occasion." *Id.* Pertinent character traits of a victim in a self-defense case are traits of violence or aggressiveness. *See id.* ("Subdivision (a)(2) permits proof of any pertinent trait of the victim. North Carolina practice has confined the evidence to character for violence.").

Mere status as a felon is not evidence of character for violence or aggressiveness under Rule 404(a)(2). While possessing and carrying a firearm may qualify as a habit admissible under Rule 406, that activity or practice is not in and of itself illegal, and it is certainly not a character trait under Rule 404(a)(2). *See id.* The majority appears to contend that being a felon and/or possessing a firearm can

be evidence of general lawlessness which per se places a defendant in reasonable fear. But this is insufficient under the rule. There must be some evidence of violence or aggressiveness on the part of the victim. Otherwise, the evidence is simply being offered for propensity purposes: the victim was a bad guy, and he was acting like a bad guy on this occasion.

Further, even if the trait of general lawlessness was pertinent under Rule 404(a)(2), "[o]nce the admissibility of character evidence in some form is established under this rule, reference must then be made to Rule 405, which follows, in order to determine the appropriate method of proof." Commentary, N.C.G.S. § 8C-1, Rule 404(a); *see also Bass*, 371 N.C. at 543 ("Whether character evidence is admissible under Rule 404(a)(2) is merely a threshold inquiry, separate from the determination of the *method* by which character may be proved . . . [under] Rule 405.").

Pursuant to Rule 405, character evidence may be introduced through testimony concerning reputation or opinion, or by use of specific instances of conduct when "character or a trait of character of a person is an essential element of a charge, claim, or defense." N.C.G.S. § 8C-1, Rule 405(a)–(b) (2025). But here, no witness was called to testify about the victim's reputation for violence in the community, and no witness provided an opinion concerning the victim's violent character. The character evidence defendant attempted to offer related *only* to the victim's status as a felon and him carrying a firearm. But such evidence, which the trial court determined was not relevant, could not qualify for admission under Rule 405(b) because, according to

defendant's attorney, defendant did not know exactly what offenses the victim had been convicted of. Thus, defendant attempted to offer specific instances of conduct, felony convictions, without any knowledge of the underlying offenses. Defendant's evidence simply did not satisfy either prong of Rule 405.

The trial court understood this and made it clear when the State moved to exclude references to the victim's convictions. "[K]nowing that one is a convicted felon in and of itself . . . is distinctly different from knowing one has a reputation for violence, a reputation for dangerousness, [etc.]" As the trial court correctly determined, defendant failed to satisfy Rule 404(a)(2) and Rule 405.

The majority then rewrites the Rules of Evidence and hornbook law by concluding this evidence is admissible under Rule 404(b). Rule 404(b) first echoes the prohibition against use of propensity evidence in Rule 404(a), stating that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C.G.S. § 8C-1, Rule 404(b). But the rule contemplates that this type of evidence may be used "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* By incorrectly cabining its analysis to Rule 404(b), the majority extends Rule 404(b) beyond its intended reach and suggests by silence that the method of proof under Rule 405 is not relevant to this inquiry.

One need only to review footnote 1 in the majority opinion to see why its Rule

404(b) analysis is wrong. The temporal proximity and substantial similarity determinations are basic to any 404(b) inquiry. But the majority, without citing any authority or support, proclaims that those are "not applicable because the inquiry is not about whether Mr. Cass's previous crimes were similar to his actions on the day of the shooting, but it is instead about whether Mr. Hague's state of mind was reasonable." The majority is correct that temporal proximity and substantial similarity are not applicable to the inquiry here, but not for the reasons they think. It's not because we suddenly abandon the temporal proximity and substantial similarity analyses when we are looking to defendant's state of mind, it is because Rule 404(b) is not applicable. The leading treatise on evidence in North Carolina confirms this: Rule 404(b) "does not govern admissibility of evidence of the victim's violent character to prove apprehension by the defendant. The purpose of such evidence is not to prove conduct by the victim, but to prove defendant's state of mind." *Brandis & Broun on North Carolina Evidence*, ch. 4, § 90, at 291 (8th ed. 2018).

Consistent therewith, we have held that "Rule 404(b) expressly prohibits admission of evidence" when a defendant attempts to show a victim "had a history of criminal convictions and disciplinary infractions" to show a propensity for violence. *State v. Smith*, 337 N.C. 658, 666 (1994). In that case, the defendant had no specific knowledge of the victim's prior offenses, and this Court reasoned that without such knowledge, the victim's convictions would have "no tendency to make the existence of defendant's belief as to the apparent necessity to defend himself from an attack more

or less probable than it would be without the evidence." *Id.*

The record here shows defendant knew only that the victim was a felon; he did not know the nature of the prior convictions. Defendant nevertheless argues that the victim's possession of a firearm and his presence on the property caused him to fear the victim was committing a felony at the time of the incident. As the trial court noted, however, mere unlawful activity, like felony littering in excess of 500 pounds, *see* N.C.G.S. § 14-399(e) (2025), or larceny of pine straw, also a felony, *see* N.C.G.S. § 14-79.1 (2025), is not enough to place a defendant in reasonable fear of death or great bodily harm. But it is now.

Rule 404(b) prohibits evidence of prior crimes, wrongs, or acts when offered solely to prove a person acted in conformity therewith, and the majority's reasoning improperly relies on the precise inference Rule 404(b) forbids: because the victim was a felon, he acted unlawfully on the day in question. Defendant here had only vague knowledge of the victim's status as a felon and was aware that the victim carried a gun. At most, defendant had knowledge of the victim's general lawlessness, not specific information concerning pertinent character traits for violence or aggressiveness. As such, the trial court did not err and the decision of the Court of Appeals should be reversed.